795 So.2d 1176 (2001)
Gloria SCOTT, et al.,
v.
THE AMERICAN TOBACCO COMPANY, et al.
No. 2001-CC-2498.
Supreme Court of Louisiana.
September 25, 2001.
Rehearing Denied October 15, 2001.
*1179 William P. Barnette, Charles M. Shaffer, Jr., Jack Williams, William L. Durham, II, King & Spalding; Carmelite M. Bertaut, William F. Grace, Jr., Peter J. Rotolo, III, Chaffe, McCall, Phillips, Toler & Sarpy; Scott E. Delacroix, Deborah B. Rouen, Charles F. Gay, Jr., Ronald J. Sholes, Jeffrey E. Richardson, Adams & Reese; Stephen H. Kupperman, Phillip A. Wittmann, Dorothy H. Wimberly, Stone, Pigman, Wather, Wittmann & Hutchinson; Steven W. Copley, Ernest E. Svenson, Gordon, Arata, McCollam, Duplantis & Eagan, New Orleans; Mark A. Belasic, Kevin D. Boyce, Jones, Day, Reavis & Pogue; Gary R. Long, James P. Muehlberger, Jennifer L. Brown, Shreveport, Tammy B. Coker, Shock, Hardy & Bacon; Robert C. Williams, Baton Rouge, Counsel for Applicant.
Wendell H. Gauthier, Bruce C. Dean, Deborah M. Sulzer, Gauthier, Downing, Labarre, Beiser & Dean, Matairie; Russ M. Herman, Stephen J. Herman, Herman, Herman, Katz & Cotlar; Robert L. Redrearn, Simon, Peragine, Smith & Redfearn, New Orleans; William B. Baggett, Jr., Baggett, McCall & Burgess, Lake Charles; Kenneth M. Carter, Carter & Cates, New Orleans; Michael X. St. Martin, St. Martin & Williams, Houma; Calvin C. Fayard, Jr., Fayard & Honeycutt, Denham Springs; Donald G. Kelly, Kelly, Townsend & Thomas; Melvin L. Holden, W. James Singleton, Shreveport, Holden, Harig, & Guidry; Edwin R. Murray, Dominic J. Gianna, Middleberg, Riddle & Gianna; Joseph M. Bruno, Christine L. DeSue, Stephen B. Murray, David S. Scalia, Walter J. Leger, Jr., New Orleans, Counsel for Respondent.
PER CURIAM[*]
We granted certiorari in this class action case to review the rulings of the district court on challenges for cause made by defendants as to certain prospective jurors with immediate family members who were also prospective members of the class. For the reasons that follow, we affirm the district court's judgment in part and reverse it in part.

FACTS AND PROCEDURAL HISTORY
This litigation arises from a class action filed by plaintiffs against various tobacco defendants. Essentially, plaintiffs allege defendants manufactured, promoted and sold cigarettes to them while fraudulently concealing and denying that the cigarettes contained the drug nicotine. Among the remedies sought by plaintiffs was the establishment *1180 of a medical monitoring program. The plaintiff class consists of all Louisiana residents who are or were smokers on or before May 24, 1996 and who desire to participate in medical monitoring and/or cessation assistance programs.
During jury selection, defendants challenged for cause several prospective jurors with immediate family members who smoked. Some of these same jurors indicated they would like to see their relatives receive free medical monitoring and smoking cessation assistance.[1] The district court denied these challenges.
At the conclusion of jury selection, defendants sought supervisory review in the court of appeal of the trial court's rulings denying their challenges for cause as to these jurors. Defendants also sought review of the district court's rulings denying challenges for cause alleging bias against other jurors.
A five-judge panel of the court of appeal, in a split decision, granted the writ in part and denied it in part. The majority found one juror and one alternate juror revealed bias toward defendants in their answers to questions during voir dire. As a result, the court of appeal found the district court erred in failing to grant defendants' challenges for cause as to these jurors.
However, the majority of the court of appeal rejected defendants' argument that those prospective jurors with family members who also could be potential class members should be excluded. The court found that merely because the prospective juror's family member was a potential class member does not automatically mean the prospective juror cannot be fair and impartial. Finding no abuse of discretion in the district court's conclusion that these prospective jurors could be fair and impartial, the majority of the court of appeal denied the writ on this issue.
Two judges dissented on this point. They observed that while the prospective jurors indicated they could be fair and impartial, such a statement failed the "psychological burdens of credibility" when the prospective juror potentially had immediate family members in the class. Because of the high profile nature of this case and its ability to affect thousands of Louisiana residents for the next twenty-five years, the dissenting judges felt it was imperative that the jury selected avoid even the appearance of impropriety which would inevitably result if a juror was deciding remedies affecting his or her immediate family.
Following the court of appeal's ruling, defendants sought relief in this court. Defendants assigned two errors in their application to this court. First, they complained the district court erred in failing to grant their challenges for cause as to the prospective jurors with immediate family members who were potential members of the class. Secondly, they argued the district court erred in failing to grant their challenges for cause alleging bias on the part of other jurors. We granted the writ to address the first assignment of error, and denied the writ in all other respects.
The issues presented for our consideration are: (1) whether there is a per se prohibition against seating jurors whose immediate family members are potential members of the class, and (2) if no per se prohibition exists, whether the district court abused its discretion under the facts of this case in denying defendants' challenges for cause as to these jurors.
*1181 At the outset, we note it is unusual for this court to exercise its supervisory jurisdiction to review a district court's rulings during voir dire, especially when the case is presented in a pre-trial posture. However, this case involves unique circumstances due to the broad scope of the potential class, which may include a large percentage of Louisiana residents. Given the far-reaching consequences of this action, as well as the complexity and the length of trial, concerns of judicial economy motivate us to address these issues at this time.

DISCUSSION

Per Se Exclusion of Jurors with Immediate Family Members Who are Potential Class Members
Defendants argue in favor of a per se rule excluding any prospective jurors who have immediate family members who are potential class members. Defendants reason that if the jury finds in favor of plaintiffs, such a finding will result in the availability of medical monitoring and smoking cessation assistance for these jurors' relatives. Under such circumstances, defendants suggest it is impossible for the district court not to reasonably believe that the juror's relationship with the immediate family member would not influence the juror in coming to a verdict, mandating that the challenge for cause be granted under La.Code Civ. P. art. 1765(3).
Despite defendants' argument to the contrary, there is nothing in La.Code Civ. P. art. 1765(3) which would suggest the legislature intended a "bright line" rule which would automatically exclude a prospective juror for cause merely because that prospective juror may be influenced by a family relation. Rather, that article, which is phrased in permissive language, provides that a juror may be challenged for cause if the juror's blood relations are such that it must be reasonably believed that they would influence the juror in coming to a verdict:
A juror may be challenged for cause based upon any of the following:
* * *
(3) When the relations whether by blood, marriage, employment, friendship, or enmity between the juror and any party or his attorney are such that it must be reasonably believed that they would influence the juror in coming to a verdict....
While this court has never addressed the precise issue presented in this case, we have never held that a juror should be automatically disqualified because of a relationship. For example, in State v. Gray, 351 So.2d 448, 455 (La.1977), the defendant argued the trial court should have excused three jurors because one juror was acquainted with the prosecuting and defense attorneys and was in business with the relative of a prosecuting attorney, one juror was a social friend of the prosecuting attorney and the third juror was the nephew of the sheriff of the parish where the prosecution was taking place. We found no error in the trial court's refusal to excuse these jurors, stating:
A trial judge is granted much discretion in determining the composition of the jury. The mere existence of personal acquaintances between a prospective juror and the trial participants does not, without more, demonstrate a lack of fitness to serve as a juror. In the present case all three of the prospective jurors stated on voir dire that the relationship involved would not prevent their impartial service on the jury. We cannot say that the failure to excuse these jurors was an abuse of the trial judge's discretion.
Similarly, courts have held the existence of a physician-patient relationship between a juror and the defendant was not sufficient *1182 to create a presumption that the juror could not render a fair verdict. Cobb v. Kleinpeter, 95-271 (La.App. 3rd Cir.10/4/95), 663 So.2d 236, writ denied, 95-2683 (La.1/12/96), 666 So.2d 323; Seals v. Pittman, 499 So.2d 114 (La.App. 1st Cir.1986). In Savoie v. McCall's Boat Rentals, Inc., 491 So.2d 94 (La.App. 3rd Cir.), writ denied, 494 So.2d 334 (La.1986), the defendant argued there should be an automatic prohibition against a husband and wife serving together on the same jury. The court of appeal rejected this argument, finding the trial court inquired as to whether they could exercise independent judgment, and was satisfied they could do so.
In sum, we are convinced there is no legislative or jurisprudential support for defendants' position that all jurors with family members who are potential class members must be excluded from the jury on a per se basis. Accordingly, we find the trial court did not err in refusing to excuse such persons from serving on the jury on this basis alone.

Whether the District Court Abused its Discretion under the Facts of this Case in Denying Defendants' Challenges for Cause
Having determined there is no per se prohibition against jurors serving on the jury merely because they have immediate family members who are potential members of the class, we now determine whether the district court abused its discretion in denying defendants' challenges for cause as to these jurors. In doing so, we begin from the well-settled proposition that if a prospective juror is able to declare to the district court's reasonable satisfaction that he could render an impartial verdict according to the law and evidence, a challenge for cause to that juror is properly denied. State v. Claiborne, 397 So.2d 486 (La.1981); State v. McIntyre, 381 So.2d 408 (La.1980). The trial court is vested with broad discretion in ruling on challenges for cause and such rulings will not be disturbed on appeal absent an abuse of discretion. State v. Benoit, 440 So.2d 129 (La.1983). However, while the trial court is accorded broad discretion in ruling on challenges for cause, this court has cautioned that "[a] challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render judgment accordingly may be reasonably implied." State v. Hallal, 557 So.2d 1388, 1390 (La. 1990) (citing State v. Jones, 474 So.2d 919, 926 (La.1985)). With these principles in mind, we now turn to an examination of the transcript of the voir dire of the twelve jurors with immediate family members who are prospective class members to determine whether there is any basis for a reasonable belief under La.Code Civ. P. art. 1765(3) that these jurors' family relations would influence them in reaching a verdict.[2]
Juror No. 1 is a thirty-four year old male, whose father is a former smoker and whose mother and brother are current smokers. During voir dire, when asked if he would want any of his relatives to participate in a smoking program, he responded that he had asked them if they wanted to quit, but they declined. Juror No. 1 also testified that he had briefly smoked in the past.[3] When asked whether he would *1183 consider participating in a smoking cessation program, he indicated he was not sure.
Juror No. 1's responses, when taken as a whole, indicate a basis for a reasonable belief that the juror's family relations may influence him in coming to a verdict. Juror No. 1's statement that he had specifically asked his mother and brother if they wanted to quit smoking, coupled with his failure to rule out his own participation in a smoking cessation program, suggest that Juror No. 1's verdict could be influenced by the availability of such programs.[4] Under these circumstances, we find the district court abused its discretion in denying defendants' challenge for cause as to Juror No. 1.
Juror No. 2 is a forty-four year old female, whose father is a former smoker. During voir dire, she indicated her father stopped smoking over forty years ago. When asked if she would like to see her father receive any medical monitoring, she stated, "I don't have an opinion on that." She indicated she did not know what his view is on medical monitoring.
Nothing in Juror No. 2's responses indicates a basis for a reasonable belief the juror's family relations are such that they would influence her in coming to a verdict. This juror's responses taken as a whole demonstrate she has no strong belief regarding medical monitoring, making it unlikely that the potential availability of such monitoring to her father would affect her ability to be impartial. Accordingly, we do not find the district court abused its discretion in denying defendants' challenge for cause as to Juror No. 2.
Juror No. 5 is a thirty-two year old female, whose father is a former smoker. During voir dire, she indicated her father stopped smoking over twenty years ago. Also, she stated her father had triple bypass surgery about five years ago; however, she did not feel the surgery was related to his smoking. Rather, his heart condition could have resulted from his eating habits. Juror No. 5 affirmatively stated she could listen to the evidence and could be fair.
While Juror No. 5 was not examined extensively during voir dire regarding the potential availability of medical monitoring to her father, her testimony as a whole indicates that her judgment would not be adversely affected because of her father's condition and that she could be fair. Under these circumstances, we cannot say the district court abused its discretion in denying defendants' challenge for cause as to Juror No. 5.
Juror No. 7 is a thirty-five year old female. Her mother is a long-time smoker who recently quit and her two brothers are current smokers. During voir dire, she indicated she would want her mother to participate in a medical monitoring program. She stated she did not know whether her mother would participate, but would recommend that she participate.
The responses of Juror No. 7, taken as a whole, present the basis for a reasonable belief that she may be influenced by the potential availability of medical monitoring to her mother. Juror No. 7 obviously perceived a strong benefit to her mother from medical monitoring, as demonstrated by the fact she would recommend it to her mother, even though she was not sure her *1184 mother would accept it. While we recognize Juror No. 7 indicated she could be fair, we nonetheless conclude the district court abused its discretion in failing to sustain defendants' challenge for cause as to this juror.
Juror No. 10 is a fifty-seven year old female, whose husband is a former smoker and whose four sons are current smokers.[5] During voir dire, she indicated she did not think her sons would like to quit smoking. She stated she would like her sons to get medical tests to determine if smoking is harming their health, although she expressed some skepticism regarding whether the tests would "make sense" in light of their continued smoking.
Juror No. 10's responses as a whole demonstrate that she would like her sons to have the benefit of medical monitoring, even though she questioned its effectiveness. In applying the reasonable belief test of La.Code Civ. P. art. 1765(3), we find ordinary experience suggests that as a mother, Juror No. 10's love for her children could influence her verdict. Under these circumstances, we conclude the district court abused its discretion in denying defendants' challenge for cause as to Juror No. 10.
Juror No. 11 is a forty-two year old female, whose sister is a current smoker. During voir dire, she indicated her sister has been smoking for a long time, but her sister's smoking does not bother her one way or the other. She stated that her sister really does not care about developing smoking related diseases. She also stated she felt her sister should get medical monitoring, but probably would not. She was expressly questioned as to whether she would be more likely to rule in favor of plaintiffs because of the potential availability of medical monitoring to her sister. In her response, she stated she would have to weigh the evidence.
Juror No. 11's initial response suggests a possibility that she could be influenced by the availability of monitoring for her sister. However, when asked specifically by plaintiffs' counsel whether the availability of monitoring would influence her decision, she essentially responded in the negative, indicating her decision would be based on the evidence. Under these circumstances, we find that while Juror No. 11's preliminary response was suspect, plaintiffs' counsel successfully rehabilitated her by demonstrating her verdict would not be influenced by the potential availability of medical monitoring to her sister. Accordingly, we find no abuse of discretion in the district court's ruling denying defendants' challenge for cause as to this juror.
Juror No. 12 is a fifty-four year old male, whose father is a former smoker. During voir dire, he indicated that he is not concerned with his father possibly developing lung cancer, because his father goes to the doctor quite often. When asked whether he wanted to see his father get medical monitoring, he responded that his father goes to the doctor regardless. In addition, he stated that his "father wouldn't want nothing free anyway." He indicated that regardless of what his father may or may not want, he could be fair in deciding the case.
Juror No. 12's responses indicated he saw little benefit to medical monitoring for his father, because his father already received regular check-ups. Taken as a whole, Juror No. 12's responses support his statement that he could be fair in deciding the case. The district court did *1185 not abuse its discretion in denying defendants' challenge for cause as to Juror No. 12.
Alternate Juror No. 13 is a fifty-two year old female, whose husband is a former smoker and whose brother is a current smoker.[6] During voir dire, she indicated she would like to see her brother quit smoking and would probably like to see him participate in a free smoking cessation program and receive free medical monitoring, although she had some doubt as to whether he would participate.
Alternate Juror No. 13's responses indicate that she perceived a benefit from the potential availability of medical monitoring for her brother. Although she indicated she could be fair, her responses taken as a whole disclose a basis for a reasonable belief that the availability of medical monitoring for her brother could influence her verdict. Accordingly, we find the district court abused its discretion in denying defendants' challenge for cause as to Alternate Juror No. 13.
Alternate Juror No. 14 is a thirty-six year old male, whose mother and father are former smokers. During voir dire, he admitted his parents smoked for a short period of time and quit over twenty years ago. In addition, he stated that his father recently had a stroke and is ill. When asked if he would be interested in seeing his father receive free medical monitoring, he initially stated that he would be interested. However, when asked the question again, he stated he changed his mind and would not like to see his father participate in a free medical monitoring program.
Although Alternate Juror No. 14 initially indicated that he would like to see his father receive medical monitoring, his subsequent response clearly and unequivocally demonstrated that he changed his mind on this issue and would not want his father to participate in medical monitoring. In ruling on defendants' challenge for cause, the district court observed that Alternate Juror No. 14's subsequent response negated any inference that he would be favorable to plaintiffs because of the availability of monitoring to his father. We cannot say the district court's ruling represents an abuse of discretion.
Alternate Juror No. 17 is a forty-one year old female, whose father is a current smoker. During voir dire, she stated her father did not opt out of the class in this case. She indicated she would like to see her father receive medical monitoring and participate in a smoking cessation program, although she questioned whether he would do so.
Despite her assertions that she could be fair, Alternate Juror No. 17's responses taken as a whole form the basis for a reasonable belief that the potential availability of medical monitoring for her father could influence her decision. She acknowledged her father is a potential class member who has not opted out of the class, and stated she would like to see him receive medical monitoring and smoking cessation assistance. Under these circumstances, we conclude the district court erred in denying defendants' challenge for cause as to Alternate Juror No. 17.
Alternate Juror No. 21 is a forty year old female, whose mother is a former smoker and whose husband is a current smoker who has not opted out of the class. During voir dire, she stated her husband has high blood pressure and his doctor wanted him to quit smoking. She indicated she is close to her mother and would like to have the best medical treatment *1186 and medical detection facilities available to her mother. She would like her mother to have an opportunity to receive free medical monitoring. In addition, when asked about her husband and his receiving free medical monitoring, she admitted she was "biased" and that she would want him to receive medical monitoring. She further indicated she was worried about his health and his smoking.
Alternate Juror No. 21's responses conclusively demonstrate a basis for a reasonable belief that the availability of monitoring to her relatives would influence her verdict. She clearly expressed a desire for her mother and husband to receive medical monitoring. She candidly admitted that she was biased with regard to the availability of monitoring to her husband. Although Alternate Juror No. 21 later testified she could be fair, we find this testimony is insufficient to rehabilitate her. The district court erred in denying defendants' challenge for cause as to Alternate Juror No. 21.
Alternate Juror No. 22 is a thirty-eight year old female, whose mother is a current smoker. During voir dire, she stated her mother has asthma and that doctors opined smoking was the cause of her mother's asthma. She also indicated she would like to see her mother quit smoking and would encourage her mother to participate in a smoking cessation program. She has strong beliefs regarding cigarettes and their addictiveness and their harmfulness.
Alternate Juror No. 22's responses demonstrate a basis for a reasonable belief that the availability of monitoring to her mother would influence her verdict. She indicated she wanted her mother to quit smoking and would encourage her to participate in a smoking cessation program. While she indicated she would not decide the case in favor of plaintiffs just to help her mother, we find her responses as a whole suggest otherwise. The district court erred in denying defendants' challenge for cause as to Alternate Juror No. 22.

CONCLUSION
In sum, we find that La.Code Civ. P. art. 1765(3) does not set forth a per se rule which requires automatic disqualification of a prospective juror with a family member who is a potential class member. Rather, such determinations must be made upon review of the voir dire testimony of each juror, and upon consideration of the juror's testimony as a whole.
Reviewing the record in this case, we find the district court abused its discretion in failing to excuse for cause Jurors Nos. 1, 7 and 10 and Alternate Jurors Nos. 13, 17, 21 and 22. As to all other jurors, we find no abuse of discretion in the district court's rulings.
On remand, we direct the district court to replace the excused jurors with the previously-selected alternate jurors who have not been disqualified. The district court should then perform new jury selection for purposes of replenishing the pool of alternate jurors.[7]

DECREE
For the reasons assigned, the judgment of the district court is reversed insofar as it denied defendants' challenges for cause as to Jurors Nos. 1, 7 and 10 and Alternate Jurors Nos. 13, 17, 21 and 22. In all other respects, the judgment of the district court is affirmed. The case is remanded to the *1187 district court for further proceedings consistent with this opinion.
CALOGERO, C.J., concurs and assigns additional reasons.
KIMBALL, J., concurring in part, dissenting in part, and assigning reasons.
JOHNSON, J., dissenting and assigning reasons.
VICTORY, J., concurring in part, dissenting in part, and assigning reasons.
KNOLL, J., concurring in part, dissenting in part, and assigning reasons.
CALOGERO, Chief Justice, concurring.
I am in full accord with the opinion of this court. Seven of the twelve prospective jurors should be excluded from service for the reasons stated in the per curiam opinion. As to the other five, they will be allowed to serve on the jury as it cannot be reasonably believed that these individuals would be influenced in coming to a verdict, or so the trial judge with wide discretion so concluded.
The law does not compel the exclusion of jurors because they are related to a party unless the circumstances shown are such that it is reasonable to believe the relationship would influence the juror in coming to a verdict. See Louisiana Code of Civil Procedure article 1765.
I would conclude, and assume that those signing the per curiam opinion would agree, that an individual should not sit on a jury in the trial of a close family member charged with a crime and facing punishment, nor in a civil case where a close family member is a party seeking to assert or defend against a substantial monetary claim or a similarly important litigious matter.
But this is not the case here. The five jurors who have not been excused do not have family members who are parties in this litigation, nor do they have close relatives with serious monetary or liberty interests at stake. Therefore, the trial judge had to consider all the facts before him in determining whether these individuals could be fair and unbiased in rendering a verdict. He considered questionnaire response as well as answers upon live interrogation and was not convinced that the defendants had met their burden of proving that these jurors should be excused for cause. Based upon the record, the trial judge did not err in his decision regarding these five jurors.
KIMBALL, J., concurring in part, dissenting in part.
I agree with the majority that La.Code Civ. P. art. 1765(3) does not set forth a per se rule which requires automatic disqualification of a prospective juror with a family member who is a potential class member. However, I dissent from the finding that the trial judge abused his discretion in this matter. While some of the answers may cause question from the cold record before us, I believe that the trial judge who has the ability to observe the mannerisms, tone of voice and body language of each juror is in a better position to make those judgments than this Court. Additionally, I do not believe it is the function of this Court to micro-manage the selection of a jury in this manner. Therefore, I would uphold the trial court's findings on these jurors.
JOHNSON, J., dissenting.
I would deny this writ application. In the past, we have respected the vast discretion exercised by district trial judges in the course of jury selection. We have depended on them to see prospective jurors, listen to their answers, and make determinations as to whether jurors could be fair.
*1188 The defendants describe this litigation to provide medical monitoring programs for smokers and former smokers as "the largest class action in Louisiana history." They argue that a different set of rules should apply because of the potential for money damages.
I disagree. We still must rely on trial judges, not cold transcripts, for making credibility determinations.
Moreover, I believe that it is completely unrealistic to attempt to draw a bright line based on the potential for bias when, in fact, the class is so broad. When you look at the parameters of the class, every citizen in Louisiana, including judges, are potential members of the class, as virtually everyone is connected in some fashion to a smoker or former smoker.
VICTORY, J., concurring in part, dissenting in part.
La.Code Civ. P. art 1765 provides in pertinent part:
A juror may be challenged for cause based on any of the following:
(2) When the juror has formed an opinion in the case or is not otherwise impartial, the cause of his bias being immaterial;
(3) When the relations whether by blood, marriage, employment, friendship, or enmity between the juror and any party or his attorney are such that it must be reasonably believed that they would influence the juror in coming to a verdict. [Emphasis added.]
Fundamental to our system of justice is the rule of law providing that jury trials must be tried before an impartial jury. At issue in this case is whether parents, children, and siblings of persons who qualify to participate as plaintiffs in a class action lawsuit should be allowed to sit as jurors to determine whether judgment is rendered in favor of their relatives. While the Per Curiam of the Court has reversed the decision of the trial court in part and has ordered Jurors Nos. 1, 7 and 10 and Alternate Jurors Nos. 13, 17, 21 and 22 to be excused and replaced, it declares as acceptable jurors Nos. 2, 5, 11, 12 and Alternate Juror No. 14. Incredibly, a plurality of the Court finds no problem with allowing parents, children, and siblings of eligible class action plaintiffs to decide the fate of the class action claims. I believe that allowing such individuals to sit as jurors strikes at the very heart of the jury system. None of the cases cited in the Court's Per Curiam stands for the proposition that immediate family members of parties to a lawsuit should be seated as members of the jury panel. I have been unable to locate a single reported Louisiana decision in which such closely related family members have been allowed to decide the fate of their relatives' cases.
In my view, the Court falls into error because it confuses the tests applicable to excusing jurors under two distinct subsections of Code Civ. P. art. 1765. The jurors excused by the plurality all demonstrated in response to voir dire questioning that they were not impartial. They indicated an interest in the medical monitoring program sought by the plaintiff class and some even admitted that they would want their close relatives to participate in it. These jurors were clearly due to be excused under La.Code Civil P. art 1765(2), which deals with jurors who can be shown on the evidence presented to harbor actual subjective bias and who cannot be impartial. All prospective jurors who cannot be impartial are excused under article 1765(2), whether or not there is any relationship between the prospective juror and a party to the litigation.
La.Code Civ. P. art 1765(3), on the other hand, embodies a separate and different rule for excusing jurors. Under this provision, when the relationship between a *1189 prospective juror and a party to the suit is such that a reasonable person would expect the juror to be influenced by that relationship, the juror should be excused. That is the case regardless of whether actual subjective bias or impartiality can be demonstrated and even where it is denied from the subjective point of view of the individual prospective juror. Unless article 1765(3) is understood in this way, there would be no purpose to the provision, since a demonstration of actual bias would always prompt dismissal of the prospective juror pursuant to article 1765(2). Article 1765(3) utilizes an objective test to determine whether a reasonable person would believe that the demonstrated relationship is such that the relationship would influence the juror's verdict. The use of this objective reasonableness test is common in our law. See e.g., State v. Dumas, XXXX-XXXX (La.5/4/2001), 786 So.2d 80; State v. Guinn, 319 So.2d 407 (La.1975).
Not all relationships justify excusing a potential juror pursuant to Code Civ. P. art. 1765(3). The trial judge must examine the facts regarding the closeness and the nature of the relationship to determine whether a reasonable person would conclude that the prospective juror might be influenced by it. However, an immediate family member should never be allowed to sit on his or her relations' case. Such a close familial relationship is sufficient for any reasonable person to conclude that the juror's views might be influenced by that relationship. If we were to adopt the rationale suggested in the Court's Per Curiam, husbands and wives would be eligible to sit in judgment of their spouses' claims. All such potential jurors would have to do to survive a challenge for cause is to testify that they could be "fair" and refrain from saying anything that would prove actual bias.
The Per Curiam of the Court espouses the correct test under article 1765(3) when it considers Juror 10 and finds "ordinary experience suggests that as a mother, Juror No. 10's love for her children could influence her verdict." It also uses the correct test in dealing with the challenge to Juror No. 13 when it finds that even though the juror insists that she can be "fair", her love for her brother could influence her verdict. Regrettably, the Court does not apply the same test consistently to all of the challenged jurors. Had it done so, it would have excused the remaining jurors as well.
Juror Nos. 2, 5, 11, 12 and Alternate Juror No. 14 all have immediate family members who are eligible members of the defined class. They could not reasonably be expected to put aside their personal feelings and render a decision that is fair and impartial without regard to the health or welfare of their immediate family members. Just as in the case of Jurors No. 10 and alternate Juror No. 13, ordinary experience dictates that a mother, father, sister, brother, son or daughter's love would influence their verdicts. As to Jurors Nos. 5, 11, 12 and Alternate Juror No. 14, the Court errs primarily because it deviates into a subjective consideration of whether these particular jurors could overcome their familial relationships and be "fair." The majority concludes that there is no evidence that these Jurors would actually be influenced in making their decisions. This is the wrong standard. This inquiry might be relevant to a determination of whether the jurors should be disqualified for actual bias under 1765(2) but it is not determinative of whether a juror should be excused under article 1765(3). Moreover, even under the reasoning employed in the Per Curiam, the emphasis is on the wrong consideration. The Court deems it important that jurors doubt their family members would opt to participate in free medical *1190 monitoring if it were available, that the family members are already seen regularly by a physician, or that the health problems of the family members are not related to smoking. The Court ignores the fact that if these jurors render a verdict adverse to the plaintiffs, their family members will forever be precluded from making the decision to participate in free medical monitoring for cancer. Thus, whether they believe that their close relatives actually will or should participate in such a program, they will nevertheless be placed in a position as jurors of deciding whether or not that option will be available. It is this dilemma, inherent in the immediate family tie, that calls into question the integrity of any verdict these jurors might render. It is just such a situation that article 1765(3) was designed to avoid by focusing on the nature of the relationship itself, rather than demanding evidence of actual bias.
Moreover, in my view, prospective Juror No. 11 and Alternate Juror No. 14 should have been excused under both article 1765(2) and (3). Juror No. 11 has a sister who is a current smoker with a long history of smoking. The prospective juror indicated that she thought her sister should get medical monitoring. Alternate Juror No. 14 indicated on initial voir dire questioning that he would like to see his father, who recently had a stroke, receive free medical monitoring. While he said he changed his mind on that issue in response to a subsequent question, in my view his initial answer indicated a clear preference that his father have the benefit of the remedy sought by the class. These jurors demonstrated lack of impartiality in their responses during voir dire examination by indicating that they would like their family members who currently smoke or who have smoked in the past to get the benefit of medical monitoring and/or programs designed to help smokers quit smoking. These jurors were due to be excused pursuant to both La.Code Civ. P. arts. 1765(2) and 1765(3).
For the reasons indicated, I respectfully concur in the result reached by a plurality as to those jurors who have been excused. However, I dissent as to the other jurors at issue in this application who have not been excused.
KNOLL, Justice, concurring in part and dissenting in part.
For the following reasons, I respectfully concur in part and dissent in part.
The inherent weakness in the plurality opinion of the court fails to recognize the low threshold for challenging a juror for cause under LA.CODE CIV. PROC. art. 1765(3). Only a reasonable belief that an immediate family relationship to a party litigant might influence the juror is required, not actual bias. Although the statute does not specifically exclude these close family members, clearly the burden to exclude the family member of a party litigant from the jury is so low that this type of juror should easily be challenged for cause. Indeed, this court does not know of one case where a parent, sibling or spouse sat on a jury in a trial of another close family member, nor have plaintiffs cited any cases allowing such.
In my view, it is an absurdity to allow an immediate family member to sit on the jury in a trial of another close family member when the challenge has been made to excuse this juror for cause based on this relationship. Common sense dictates this conclusion. Indeed, this basic rationale and conclusion is so fundamental to our jury system, it hardly needs explanation. The party litigants are entitled to be tried by a jury composed of their peers and not a jury composed of their close family members, lest we have a mockery of the trial by jury system.
*1191 I concur only to the extent that seven of the twelve challenged immediate family jurors were excused for cause. In all other respects, I strongly and respectfully dissent.
NOTES
[*] Retired Judge Robert L. Lobrano participating in this decision as Associate Justice Pro Tempore.
[1] Defendants challenged several prospective jurors for cause on this ground contemporaneously. At the end of jury selection, pursuant to La.Code Civ. P. art. 1767, defendants made a blanket challenge for cause as to all jurors with immediate family members who were potential members of the class.
[2] Out of the twenty-two jurors and alternates, there were actually thirteen jurors with immediate family members who were potential class members. One of these, Juror No. 3, was removed by the court of appeal on different grounds. Accordingly, this juror will not be discussed.
[3] Juror No. 1 stated he was not a regular smoker, but only smoked for "about a month or so" when he was in the military.
[4] We acknowledge that the question of whether the juror himself would be influenced by the availability of class remedies is outside the scope of our writ grant, and our opinion should not be interpreted as directly addressing this issue. We merely observe that Juror No. 1's refusal to rule out the possibility his own participation in a smoking cessation program certainly implies that he may wish for his relatives to participate in such a program.
[5] The exact ages of Juror No. 10's four sons are unclear from her testimony, but she indicated they ranged from 34 to 41.
[6] Alternate Juror No. 13 actually has two brothers who smoke, but one of her brothers lives outside of the state and is therefore not a potential class member.
[7] We recognize that the court of appeal's judgment previously removed Juror No. 3 and Alternate Juror No. 18. These jurors should be replaced by the district court using the procedures we have outlined.