814 So.2d 544 (2002)
Gloria SCOTT, et al.
v.
The AMERICAN TOBACCO CO., et al.
No. 2002-CC-0770.
Supreme Court of Louisiana.
March 28, 2002.
Rehearing Denied May 3, 2002.
*545 PER CURIAM.
The background facts of this litigation are set forth in our prior decision in Scott v. American Tobacco Co., 01-2498 (La.9/25/01), 795 So.2d 1176 (hereinafter referred to as Scott I). Defendants now seek review of the trial court's rulings denying their challenges for cause as to four prospective jurors (Jurors Nos. 15, 16, 18 and 20) who have family members who smoke.[1] Defendants assert the trial court's denial of their challenges as to these prospective jurors violates the principles set forth in this court's opinion in Scott I.

DISCUSSION

Juror No. 15
Juror No. 15 has a brother with a heart problem, who smoked for about ten years or so when he was younger. She stated that her and her brother are close and that she is interested in his health and well-being. When asked if she would like to see him have the opportunity to participate in medical monitoring, she responded, "I hadn't thought of it before because I just didn't know what the case was about. I still don't know what is exactly involved with this help." When explained the tests relate to heart problems and heart disease, she further replied, "Well, if it's available if it becomes available, I certainly would not want him not have it." When asked again, she replied, "If it's available and it applies to him." When asked would the fact that her brother, as a former smoker, may be entitled to medical monitoring influence her decision in this matter, she replied, "No, I don't think so." When asked if she could decide the case on the facts and evidence presented and not in light of her brother's situation, she replied, "I think I can judge." When asked if she thought she might be more sympathetic to persons suing for the medical monitoring, she replied, "I don't think that I can ignore the fact that I don't like smoking. And I think that that would bethat could influence part of my decision. But I would think that I would be fair when I heard both sides."
Taken as a whole, Juror No. 15's responses suggest that she could be influenced by the availability of medical monitoring for her brother. Her testimony indicated that she wanted her brother to have monitoring. Most significantly, she stated she would be sympathetic to persons seeking medical monitoring, and that this might influence her decision. While we recognize Juror No. 15 stated she could be fair, we conclude that in light of her testimony taken as a whole, the district court abused its discretion in denying defendants' challenge for cause as to this juror.

*546 Juror No. 16

Juror No. 16's father is a smoker and has been smoking since he was a teenager. He also has a brother who smoked for "a little while," but who is currently a former smoker. When asked if he would like to see his father receive free help in smoking cessation, he replied that he would like to see it. When asked regarding free medical tests, he stated, "Yeah, I wouldn't mind if it was an opportunity for him to go and get some free tests. I mean, there's nothing wrong with that." When asked if it would be a good thing, he stated, "Oh yeah. If he was just going to get a free test, I mean, who wouldn't. I mean, anything free in medical is good." He further testified he is worried that all these years of smoking may have harmed his father's health.
Juror No. 16 indicated he would like to see his father receive free medical tests. He obviously perceived a benefit in such tests, as he believed his father's health may have been harmed by smoking. We find these responses taken as a whole disclose a basis for a reasonable belief that availability of medical monitoring for his father could influence his verdict. The district court erred in denying defendants' challenge as to this juror.

Juror No. 18
Juror No. 18 has an uncle and a mother-in-law who are current smokers. He stated he has a pretty close relationship with both. His father died from heart disease and was a former cigar smoker. He does not know if the heart disease was related to smoking. If it is established that the medical programs would be beneficial to the class members of this matter, he would want his family members to have the benefit of the medical programs. When asked if he thought early detection tests are a good idea, he replied in the affirmative and would like to see his uncle and mother-in-law receive such tests. He admitted it is possible those thoughts of his family receiving early detection tests may creep into his mind during the course of the trial, but it would not influence him in any way. He further stated he would like to hear the evidence first. Finally, he stated he could put any concerns regarding his uncle and mother-in-law aside and decide the case on the evidence presented.
Juror No. 18's responses demonstrate the juror perceived a benefit from medical monitoring for his family members. He admitted the thought of his family members receiving tests could influence him. Although Juror No. 18 stated he could be fair, we conclude his responses taken as a whole demonstrate there is a reasonable basis for concluding the availability of medical testing for his relatives could influence his verdict. The district court erred in denying defendants' challenge as to this juror.

Juror No. 20
Juror No. 20 has a son (now twenty-three), who smoked in high school, but has since quit. She does not know how long he actually smoked. Juror No. 20's mother, who has bronchitis, father and sister are current smokers. She doesn't know if they would be interested in medical monitoring programs or cessation programs. When asked if tests were made available at no cost would she like to see her family get medical monitoring and cessation assistance, she answered in the affirmative. When asked if she thought it a good idea to make medical monitoring and cessation programs available to the public, she replied, "Yes. It's a good idea, but I would remain neutral, I think, and hear both sides."
Juror No. 20's responses indicate she would like to see her family members receive medical monitoring and cessation assistance. *547 She further stated it was a good idea for such programs to be available. Although Juror No. 20 stated she could remain neutral, her responses taken as a whole indicate there is a possibility she may be biased due to the availability of medical monitoring for her family members. The district court erred in denying defendants' challenge as to this juror.

DECREE
For the reasons assigned, the judgment of the district court denying defendants' challenges for cause as to Jurors Nos. 15, 16, 18 and 20 is reversed. The case is remanded to the district court for further proceedings.
CALOGERO, Chief Justice, concurs in part and dissents in part. Jurors numbers 15 and 20 should be dismissed. Jurors numbers 16 and 18 should be allowed to serve.
KIMBALL and JOHNSON, JJ., would deny the writ.
VICTORY and KNOLL, JJ., concur in the result.
NOTES
[1] Defendants had previously sought review of the trial court's denial of their challenge as to a fifth prospective juror, Juror No. 21. However, this juror was removed by the court of appeal.