NOT DESIGNATED FOR PUBLICATION

**STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT**

**21-710**

**CAROL L. DARBY**

**VERSUS**

**JOHN LEE CITIZEN AND STATE FARM MUTUAL
AUTOMOBILE INS. CO.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON DAVIS, NO. C-418-18
HONORABLE DURWOOD WAYNE CONQUE, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**SHARON DARVILLE WILSON
JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Elizabeth A. Pickett, Sharon Darville Wilson, and Charles G. Fitzgerald, Judges.

**AFFIRMED AS AMENDED.**

**Daniel Keith Wall**
**Attorney at Law**
**302 East Nezpique St.**
**Jennings, LA 70546**
**(337) 824-7380**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Carol L. Darby**

**James Anthony Blanco**
**Mitchell & Blanco, L.L.C.**
**1607 Ryan Street**
**Lake Charles, LA 70601**
**(337) 436-8686**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **State Farm Mutual Automobile Insurance Company**
    **John Lee Citizen**

**Elizabeth Roche**
**Attorney At Law**
**P.O. Box 959**
**Jennings, LA 70546**
**(337) 246-5179**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Carol L. Darby**

**WILSON, Judge.**

Plaintiff, Carol Darby, appeals the judgment of the trial court finding defendants, John Lee Citizen and State Farm Mutual Automobile Insurance Company, fifty percent at fault for her injuries following an accident involving an eighteen-wheeler, and awarding her full special damages but only $25,000 in general damages. For the reasons expressed below, we amend the judgment to reflect general damages in the amount of $75,000 and affirm.

I.

## ISSUES

In this appeal we must decide:

(1)   whether the trial judge abused his discretion in denying Ms. Darby's challenges for cause based on bias and unreliability, as well as in denying Ms. Darby's motion for new trial;

(2)   whether the jury's verdict awarding $25,000 for all general damages was abusively low to constitute legal error, and whether the trial court abused its discretion in failing to grant judgment notwithstanding the verdict, additur, or new trial;

(3)   whether the jury's verdict was so inconsistent as to damages that this court must make a de novo review and render a damages award;

(4)   whether the jury's verdict finding Ms. Darby fifty percent at fault for the accident was manifestly erroneous because it was inconsistent with applicable laws and the evidence, and whether the trial court abused its discretion in failing to grant judgment notwithstanding the verdict or new trial; and

(5)   whether the trial court abused its discretion in casting Ms. Darby with fifty percent of costs.

II.

## FACTS AND PROCEDURAL HISTORY

On February 8, 2018, Mr. Citizen, a licensed professional truck driver, was on his way home from making a delivery in Iowa, Louisiana when he stopped at the Capital One Bank in Jennings, Louisiana to do his usual Friday banking. After leaving the bank, Mr. Citizen stopped his tractor and attached trailer at the stop light at the intersection of East Academy and North Cutting. At the same time, Ms. Darby was driving down East Academy on her way to pick up her grandchildren in her 2005 Toyota Camry. East Academy has two eastbound lanes, one for left turns only and one for through traffic, and one westbound lane. There is conflicting testimony about the exact position of the vehicles at the time of the accident. After the light turned green, Mr. Citizen, who was somewhere to the left of Ms. Darby, attempted to make a wide right turn from outside of the right lane in order to avoid striking utility poles that were on the corner. The side of his trailer made contact with the driver side of Ms. Darby's vehicle located in the right lane.

After the accident Ms. Darby went to the emergency room complaining of back and knee pain. She followed up by seeing Dr. Robert L. Hanks, a chiropractor, for two weeks for neck and back pain. When the pain continued, she saw her primary caregiver, Yvonne Krielow, who prescribed her muscle relaxers and gave her a steroid shot. She complained of radiating pain from her lower back and was referred for an MRI which revealed multiple disc herniations at L2-3, L3-4 and L4-5 with stenosis. Ms. Darby continued to see Dr. Hanks for her cervical soft tissue injury for another six visits and returned to Krielow for medication.

On May 3, 2018, Ms. Darby saw Dr. Malcolm Stubbs, an orthopedic surgeon. He prescribed her medication and physical therapy, but the therapy increased her pain, so she stopped that treatment. Dr. Stubbs recommended a

bilateral L3-4 and L4-5 transforaminal epidural steroid injection and referred her for a consultation with Dr. David Muldowny, a spine orthopedic surgeon. On September 14, 2018, Ms. Darby received her first set of injections. Follow up appointments with Dr. Stubbs revealed temporary relief and Ms. Darby had another set of injections on December 4, 2018. She reported longer lasting pain relief with some days being pain free, but the pain had returned by August 22, 2019, and was increasing. Ms. Darby had a third set of injections on October 8, 2019. She reported some relief from the radiating pain but not back pain and was referred for another MRI and consultation with Dr. Muldowny regarding possible surgery or further treatment. Dr. Muldowny recommended an interlaminar epidural injection at L4-5 which was performed on January 23, 2020. He also prescribed physical therapy, but Ms. Darby experienced pain doing it. Follow up appointments revealed Ms. Darby was able to modify her activity to accommodate residual symptoms. On July 28, 2020, Ms. Darby's pain had returned and Dr. Muldowny recommended her for another set of injections, which had not begun by the time of trial.

A jury trial concluded on August 20, 2020, after which a verdict was rendered finding Mr. Citizen and Ms. Darby both fifty percent at fault and awarding Ms. Darby special damages of $69,818.28 for past and future medicals, $4,377.53 for property damage, and $25,000 for general damages. The written judgment was signed on February 24, 2021. Ms. Darby filed a motion for judgment notwithstanding the verdict, and, in the alternative for a new trial, or, in the alternative additur on March 5, 2021. The basis of the motion was the issue of damages and comparative fault as well as the failure of the trial court to strike jurors for cause. After a hearing, the motion was denied with written judgment entered on May 17, 2021.

## III.

## <u>STANDARD OF REVIEW</u>

On appeal, Ms. Darby contends that the trial court erred in denying her motion for judgment notwithstanding the verdict, and, in the alternative for a new trial, or, in the alternative, for additur, based on the general damage award, allocation of fault, and failure to excuse potential jurors for cause. In *Peterson v. Gibraltar Savings & Loan*, 98-1601, pp. 5-6 (La. 5/18/99), 733 So.2d 1198, 1203, the Supreme Court laid out the standard for granting JNOV:

> JNOV is warranted only when the facts and inferences, viewed in the light most favorable to the party opposing the motion, is so strongly and overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict; the motion should be granted only when evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. *Anderson v. New Orleans Public Service, Inc.*, 583 So.2d 829 (La.1991); *Scott v. Hospital Service District No. 1*, 496 So.2d 270 (La.1986). Refusal to render a judgment notwithstanding the verdict (JNOV) can only be overturned if it is manifestly erroneous. *Delaney v. Whitney National Bank*, 96–2144, 97–0254 (La.App. 4 Cir. 11/12/97), 703 So.2d 709; writ denied 98–0123 (La.3/20/98), 715 So.2d 1211.

In reviewing the decision whether to grant a new trial, this court has previously explained:

> Articles 1972 and 1973 of the Louisiana Code of Civil Procedure set forth the grounds on which a trial court may grant a motion for new trial. Article 1972(1) states that a new trial shall be granted "[w]hen the verdict or judgment appears clearly contrary to the law and the evidence." Article 1973 states that "[a] new trial may be granted in any case if there is good ground therefore, except as otherwise provided by law." Article 1972 is considered peremptory, so that a trial court would be obligated to order a new trial if the conditions of Article 1972 were met, while Article 1973 is discretionary, and allows a trial court to grant a new trial if the circumstances require.

4

> *Poland v. Poland*, 34,085 (La.App. 2 Cir. 12/6/00), 779 So.2d 852; *David v. Meek*, 97–523 (La.App. 1 Cir. 4/8/98), 710 So.2d 1160. In either case, unless the trial court abused its generous discretion, its decision to grant or deny a new trial will not be reversed. *Henderson v. Sellers*, 03–747 (La.App. 3 Cir. 12/17/03), 861 So.2d 923; *Bankston v. Bankston*, 97–2509 (La.App. 1 Cir. 11/6/98), 722 So.2d 46.

*Gauthier v. Gauthier*, 04-198, pp. 6-7 (La.App. 3 Cir. 11/10/04), 886 So.2d 681, 686. An additur may be entered, as an alternative to new trial, when the trial court is of the opinion the verdict is so inadequate that a new trial should be granted for that reason only. La.Code Civ.P. art. 1814.

"The trial judge is afforded broad discretion when ruling on challenges for cause. His rulings will be reversed only when a review of the voir dire record as a whole reveals an abuse of discretion." *Hall v. Brookshire Bros., Ltd.*, 01-1506, p. 10 (La.App. 3 Cir. 8/21/02), 831 So.2d 1010, 1019. Similarly, juries possess vast discretion in their assessments of general damages, and an appellate court may only disturb such awards after articulated analysis of the facts discloses an abuse of discretion. *Venissat v. St. Paul Fire & Marine Ins. Co.*, 06-987 (La.App. 3 Cir. 8/15/07), 968 So.2d 1063. When reviewing allocations of fault, the trier of fact's allocation of fault should only be disturbed when it is clearly wrong or manifestly erroneous. *Duncan v. Kan. City S. Ry. Co.*, 00-66 (La. 10/30/00), 773 So.2d 670.

IV.

## LAW AND DISCUSSION

### Challenge for Cause

In her first assignment of error, Ms. Darby asserts that the trial court abused its discretion in denying her challenges for cause based on clear bias, and denying her motion for new trial when the denial of the challenges was contrary to

the law provided in La.Code Civ.P. art 1972. After reviewing the record of the voir dire as a whole, we find that the trial court did not abuse its discretion.

Louisiana Code of Civil Procedure Article 1972 provides that a new trial shall be granted, "[w]hen the verdict of judgment appears clearly contrary to the law and the evidence." Louisiana Code of Civil Procedure Article 1765 provides a juror may be challenged for cause "[w]hen the juror has formed an opinion in the case or is not otherwise impartial, the cause of the bias being immaterial[.]" It is well settled that "if a prospective juror is able to declare to the district court's reasonable satisfaction that he could render an impartial verdict according to the law and evidence, a challenge for cause to that juror is properly denied." *Scott v. Am. Tobacco Co.*, 01-2498, p. 6 (La. 9/25/01), 795 So.2d 1176, 1182. However, even when a prospective juror declares an ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice, or inability to remain impartial may be reasonably implied, the challenge should be granted. *Id.*

Ms. Darby asserts that five potential jurors, Mr. Bertrand, Mr. Witherwax, Mr. Garbarino, Mr. DeWitt, and Mr. Thibodeaux, expressed bias such that they could not remain impartial as jurors. The transcript reveals that each of the challenged jurors did in fact express a negative opinion about certain aspects of tort law and damages awards. Mr. Bertrand expressed the view that he believed people should not bring lawsuits if they are able to return to work and he was against "outrageous" awards. Mr. DeWitt revealed that he was okay with some damages but was also against large awards. Mr. Garbarino explained that he believed there should be tort reform, and he would have a problem awarding more than medicals

6

without lots of testimony. Mr. Thibodeaux had previously been sued and stated that the fact his insurer paid out left a bad taste in his mouth.

After several potential jurors expressed opinions about damages, the trial court instructed everyone that general damages were part of the law and asked if anyone was opposed to a person who believes they were injured by someone else bringing a lawsuit, proving their damages and awarding them fair compensation. No one disagreed with this statement.

Despite their misgivings, each juror also declared an ability to be impartial and fair. Mr. Thibodeaux testified that even though his prior experience left a bad taste in his mouth, he could be fair as long as there was evidence. He reaffirmed this position after the trial judge's explanation. Mr. Garbarino explained that he would be able make a damages award, but it would depend on the evidence. Mr. Bertrand and Mr. DeWitt both agreed that they could award damages that had been proven but nothing more, and they could award fair awards but nothing outrageous. The trial judge addressed the challenges of each potential juror and made a finding that each had been rehabilitated.

Perhaps the juror with the most problematic opinion was Mr. Witherwax. He stated that he would not be able to "in good conscience" award damages for "something that could not be shown quantitively, empirically things like emotional distress or loss of enjoyment of life, things like that." Even with that long held opinion, however, after receiving instruction from the trial judge on the law of damages, Mr. Witherwax responded that he could follow the law and award pain and suffering damages if they are proven without placing any higher burden on the plaintiff. He further explained that his award would be based on the evidence and the "quantity and quality of life." The trial judge addressed the challenge to Mr.

Witherwax and found that he had clearly indicated to him that he could follow the law, and while he would make the plaintiff prove her case, he would be fair.

Each of the challenged jurors were able to declare to the court's reasonable satisfaction that they could render an impartial verdict, thus, the challenges were properly denied. Considering the entire transcript, we cannot say that the judge abused his discretion in finding the jurors could be impartial. Having found that the trial court did not abuse its discretion in denying the challenges for cause, we also find that the denial was not clearly contrary to the law and evidence, and the trial court did not abuse its discretion in failing to grant the motion for new trial on those grounds.

## General Damage Award

In her second assignment of error, Ms. Darby contends that the jury's general damage award of $25,000 was abusively low, and the trial court abused its discretion in failing to grant JNOV, additur, or new trial. After reviewing the record, we agree. JNOV is only warranted when the facts and inferences, viewed in the light most favorable to the party opposing the motion, is so strongly and overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict, and a denial of a JNOV is reviewed for manifest error. *Peterson*, 733 So.2d 1198.

The Louisiana Supreme Court has set forth the standard of review for general damages as follows:

> General damages are those which may not be fixed with pecuniary exactitude; instead, they "involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or life-style which cannot be definitely measured in monetary terms." *Keeth v. Dept. of Pub. Safety & Transp.*, 618 So.2d 1154, 1160 (La.App. 2

8

Cir.1993). Vast discretion is accorded the trier of fact in fixing general damage awards. La. Civ.Code art. 2324.1; *Hollenbeck v. Oceaneering Int., Inc.*, 96–0377, p. 13 (La.App. 1 Cir. 11/8/96); 685 So.2d 163, 172. This vast discretion is such that an appellate court should rarely disturb an award of general damages. *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1261 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Thus, the role of the appellate court in reviewing general damage awards is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. *Youn*, 623 So.2d at 1260. As we explained in *Youn*:

> Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or decrease the award.

*Id.* at 1261.

> The initial inquiry, in reviewing an award of general damages, is whether the trier of fact abused its discretion in assessing the amount of damages. *Cone v. National Emergency Serv. Inc.*, 99–0934 (La.10/29/99), 747 So.2d 1085, 1089; *Reck v. Stevens*, 373 So.2d 498 (La.1979). Only after a determination that the trier of fact has abused its "much discretion" is a resort to prior awards appropriate and then only for the purpose of determining the highest or lowest point which is reasonably within that discretion. *Coco v. Winston Indus., Inc.*, 341 So.2d 332 (La.1976).

*Duncan*, 773 So.2d at 682–83. After reviewing the record, we find that reasonable men could not arrive at a contrary verdict that the general damage award of $25,000 was below what a reasonable trier of fact could award.

The record reveals that Ms. Darby has been suffering from radiating back pain for over two and one-half years following the accident. Although her records reveal she has degenerative changes not uncommon for her age, the source

of her pain is the multiple disc herniations at the L2-3, L3-4, and L4-5 levels and stenosis. While no pre-accident MRI exists to confirm the age of the herniations, the record shows that this lasting, radiating back pain did not begin until after the accident. She has received a total of four steroid injections to the back and will likely need two or three more. These injections have been able to greatly reduce Ms. Darby's pain, however, they have only been able to provide temporary relief of her back pain for several months at a time. The testimony of Ms. Darby and her doctors represent that often her pain was highly rated as eight or nine out of ten and visibly noticeable to the doctors at appointments. Due to the multiple levels of disc herniations, doctors have not been able to pinpoint the source of her pain, and Ms. Darby has not been recommended for surgery, as that would be even more painful and could make things worse. The testimony reveals that Ms. Darby used to be very active in the care of her grandchildren, and now she is unable to participate in certain activities with them such as playing ball, biking and camping. She even has difficulty attending their sporting events due to pain from sitting in the bleachers. There was also testimony that her injury interfered with her ability to care for herself and her home as basic tasks caused her pain.

This court has previously considered the reasonableness of a $25,000 award in a similar case. In *Venissat*, 968 So.2d at 1074–75,

> [T]he injured plaintiff was an individual in his late 60s who suffered from a degenerating cervical spine, resulting in him being more susceptible to the injuries and pain that, not coincidentally, developed after the accident. The evidence is undisputed that within the two days following the accident, Mr. Venissat had developed chronic pain and radiculopathy, ultimately believed to have been caused by trauma from the accident. The record also reflects that Mr. Venissat only achieved relief of his chronic pain and radiculopathy symptoms after he had undergone the three-

10

level cervical discectomy and fusion—approximately two years after the accident occurred.

Prior to undergoing the surgery, Mr. Venissat testified that the chronic pain affected his sleep, his disposition, and overall quality of life. Mrs. Venissat confirmed that she observed these negative changes in her husband until his problems were resolved by the surgery. Moreover, the record reflects that although Mr. Venissat was able to continue to work after the collision, he and his wife testified that he did so while managing his pain with medication and physical therapy, neither of which provided him with lasting results. Considering all of this, and specifically noting the medical assessments that were made in this case, the age of the injured plaintiff, and the residual affects of the injury and subsequent cervical fusion, we amend the prior award of $25,000 for pain and suffering and raise it to the lowest reasonable amount of $60,000. The quantum of all other claims comprising the total general damage award—$5,000 for loss of enjoyment of life and $10,000 for mental anguish—are affirmed. Therefore, the total general damage award is $75,000.

The key distinction between the facts of the instant case and those of *Venissat* is that Mr. Venissat was able to achieve relief from his chronic pain after a successful fusion surgery. Although Ms. Darby has not had to undergo the pain and suffering of a surgical procedure, she also has not been accorded the level of relief which Mr. Venissat had achieved. Thus, we find the $75,000 in general damages awarded in the *Venissat* case to be a reasonable award for the comparable pain and suffering and loss of enjoyment of life suffered by Ms. Darby. Accordingly, we reverse the trial court's denial of the JNOV as to the general damages award and increase the award to $75,000.

## Allocation of Fault

In her next assignment of error, Ms. Darby asserts that the jury's verdict finding her fifty percent at fault for the accident was manifestly erroneous and the

11

trial court abused its discretion in failing to grant judgment notwithstanding the verdict or new trial. After reviewing the record, we disagree.

The allocation of fault is a fact question, and the trier of fact's allocation of fault will not be disturbed unless it is manifestly erroneous or clearly wrong. *Duncan*, 773 So.2d 670. "Only after making a determination that the trier of fact's apportionment of fault is clearly wrong can an appellate court disturb the award, and then only to the extent of lowering it or raising it to the highest or lowest point respectively which is reasonably within the trial court's discretion." *Id.* at 680-81. "In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed." *Watson v. State Farm Fire & Cas. Ins. Co.*, 469 So.2d 967, 974 (La.1985). The following *Watson* factors should be considered when assessing fault:

> (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties.

*Id.*

Ms. Darby argues that the jury erred in assessing only fifty percent fault to Mr. Citizen because he had a greater duty as the right-turning motorist and as a licensed truck driver. Under our rules of the road, "[a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with

12

safety." La.R.S. 32:79. Additionally, right turns should be made "as close as practicable to the right-hand curb or edge of the roadway." La.R.S. 32:101(A)(1). As the turning vehicle, Mr. Citizen certainly had a duty to not move from his lane before it was safe to do so.

At trial the evidence revealed that the only blind spot Mr. Citizen had on his truck was directly behind him and he could see down the entire side of his truck. Ms. Darby was always in the right lane. Thus, whether Ms. Darby was directly beside the truck or further behind it to the right, Mr. Citizen should have been able to see her vehicle and refrain from making the turn if a car was coming. Expert testimony suggested that Mr. Citizen had four seconds before he began his turn in which he could have looked in his mirrors and would have seen Ms. Darby. It is clear there was sufficient evidence for the jury to reasonably find Mr. Citizen at fault.

The jury however could have also reasonably found Ms. Darby at fault. "All motorists owe a general duty to observe what should be observed." *Bernard v. BFI Waste Serv., LLC*, 20-636, p. 8 (La.App. 3 Cir. 7/21/21), 325 So.3d 415, 423, *writ denied*, 21-1271 (La. 11/17/21), 327 So.3d 995. Ms. Darby testified that Mr. Citizen was fully in the left lane, and both vehicles were stopped at the light before the accident. However, Mr. Citizen testified, and both experts agreed it was possible, that he was straddling the two lanes, and Ms. Darby was not at the stop light when he began his turn but was further back coming up the street. He also testified that he had his blinker on signaling his intention to make a right turn. If the jury believed Mr. Citizen's version of events, they could reasonably conclude that Ms. Darby was at fault in causing the accident since she failed to take notice of the large truck in front of her which was in the process of making a wide right turn. Instead, she chose

13

to insert her vehicle between the trailer and the curb where there was a possibility of her vehicle getting squeezed. Ms. Darby testified that she was aware that large trucks often must make wide turns and she acknowledged that if she knew a truck was making such a turn in front of her it made sense to wait until the truck finished before proceeding in order to avoid being squeezed.

This view is supported by the fact that the impact occurred with the landing gear, which is about halfway down the trailer, so the front of the truck was well past Ms. Darby's car. As cars accelerate faster than trucks, if both were starting from the stoplight at the same time, Ms. Darby's car should have passed the truck before it began its turn. The point of impact suggests that Ms. Darby was driving up from behind Mr. Citizen as he was beginning to make his turn and thus, she was able to avoid the accident by paying attention to the cues that the truck was turning ahead of her.

Although contested, there is evidence suggesting both drivers had an equal opportunity to avoid the accident. Accordingly, reasonable jurors could have allocated fifty-fifty fault to both drivers. We find the jury did not commit manifest error in allocating fifty-fifty fault to both drivers, and the trial court did not abuse its discretion in failing to grant JNOV or new trial on this basis.

## Costs

In her last assignment of error, Ms. Darby asserts that the trial court abused its discretion in casting her with fifty percent of costs. "Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause. Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable." La.Code. Civ.P. art. 1920. We review the trial court's award of court costs under

14

the abuse of distraction standard. *McDaniel v. Carencro Lions Club*, 05-1013 (La.App. 3 Cir. 7/12/06), 934 So.2d 945, *writ denied*, 06-1998 (La. 11/3/06), 940 So.2d 671. Given our decision to affirm the fifty-fifty allocation of fault, we do not find that the trial court abused its discretion in casting Ms. Darby with fifty percent of costs.

V.

## CONCLUSION

For the foregoing reasons, the general damage award is increased to $75,000 and the judgment of the trial court is affirmed as amended. Costs of this appeal are assessed fifty percent to plaintiff/appellant, Carol Darby, and fifty percent to defendants/appellees John Lee Citizen and State Farm Mutual Automobile Insurance Company.

**AFFIRMED AS AMENDED.**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION.
Rule 2-16.3 Uniform Rules, Courts of Appeal.