815 So.2d 156 (2002)
Patricia SCHEXNAYDER, et al.
v.
EXXON PIPELINE COMPANY.
No. 01-CA-1236.
Court of Appeal of Louisiana, Fifth Circuit.
March 13, 2002.
*158 Patrick W. Pendley, Allen J. Myles, Plaquemine, LA, for Appellants.
Patricia E. Weeks, Thomas E. Gottsegen, Gregory C. Weiss, New Orleans, LA, for Appellee.
Panel composed of Judges MARION F. EDWARDS, SUSAN M. CHEHARDY and CLARENCE E. McMANUS.
MARION F. EDWARDS, Judge.
Plaintiffs/Appellants appeal the trial court's ruling which held that no injuries or nuisances were sustained by plaintiff's following a crude oil spill at Exxon Pipeline Company's St. James Pumping Station. The plaintiff's further appeal the admission of certain portions of Exxon's industrial hygiene expert's testimony into evidence. For the following reasons, the judgment of the trial court is affirmed.
On June 27, 1993, a pump unit at Exxon's St. James Pumping Station in St. James Parish failed, resulting in the release of approximately 24 barrels of sweet Louisiana crude oil into a nearby drainage ditch. The spill was contained by Exxon later that same evening by means of clean up teams and vacuum trucks. More than 90% of the oil had been recovered by the morning of June 28, 1993. Personal monitoring devices worn by Exxon employees cleaning the spill indicated that these worker's exposure to benzene and hydrocarbons were within the guidelines of not requiring the use of protective equipment. It was further confirmed by the monitoring equipment that the employees assisting in the clean up of the spill were not exposed to a level of hydrocarbons that would have produced adverse health effects. Two days after the spill, Exxon provided written notification of the spill to St. James residents.
The nearest residential community, home to several plaintiffs in the instant suit, is located almost one mile away from the site of the spill. On July 13, 1993 over 1000 St. James area residents filed suit against Exxon in the 23rd Judicial District Court, alleging that their exposure to crude oil vapors caused a number of physical injuries, and constituted a nuisance on their respective properties.
On May 25, 2000 the bench trial of 10 bellwether plaintiff claims began before the Honorable Ralph Tureau. At the conclusion of the two day trial, the court held that Exxon was liable for any damages sustained by the plaintiffs, but that the plaintiffs had not suffered any physical injuries or nuisances. Plaintiffs timely filed this appeal.

LAW AND ANALYSIS
In their first assignment of error, plaintiffs assert that the trial court committed manifest error by admitting into evidence testimony of Exxon's industrial hygiene expert, Andry Nowosiwsky, that related to his opinions about adverse health effects resulting from exposure to crude oil vapors. Conversely, Exxon argues that their industrial hygiene expert was eminently qualified to evaluate the causal relationship *159 between exposure to chemical substances and adverse health effects. Exxon further argues that the trial court evaluated Nowosiwsky's testimony in its proper context.
The trial court has great discretion whether to qualify an expert witness and has wide latitude whether an expert has the competence, background and experience to qualify.[1] The exercise of that discretion will not be disturbed by an appellate court unless it is clearly erroneous.[2] Once the expert is permitted to testify in his field, the trier of fact has great discretion as to accept or reject the expert's opinion, which goes to the credibility of the witness.[3] The issue to be resolved by the reviewing court is not whether the factfinder was right or wrong, but whether his conclusion was a reasonable one.[4]
In this case, the trial court accepted Andry Nowosiwsky as an expert in the field of industrial hygiene. In his videotaped deposition, which was offered in lieu of live testimony at trial, Nowosiwsky defined industrial hygiene as "the anticipation, the recognition, evaluation, and control of occupation health hazards." Counsel for the plaintiffs indicated that his objection was not to the qualification of Nowosiwsky as an industrial hygienist, but rather to certain opinions that Nowosiwsky gave during his deposition regarding whether the plaintiffs would have suffered physical effects resulting from the oil spill. Before viewing Nowosiwsky's videotaped deposition, the Court recited the following caveat:
THE COURT:
The Court is going to receive the deposition into evidence. The Court is going to realize that he [Nowosiwsky] is an expert in the field of industrial hygiene, also. I'll view all of his testimony in that light. The Court also recognizes that he's not a toxicologist, he's not a medical doctor, he hasn't examined any of these people at all. So the Court is fully aware of that.
... With that said, I will receive it [the testimony] subject to that caveat, and will review it."
A majority of Nowosiwsky's testimony focused on hydrocarbon testing that took place at Exxon site following the crude oil spill, as well as the finding that none of the personnel who participated in the clean up of the oil were exposed to unsafe concentrations of hydrocarbon vapors. Such testimony and observation clearly would have been within Nowosiwsky's realm of expertise as an industrial hygienist. To the extent that Nowosiwsky was asked about the possible health effects the oil spill may have had on the plaintiffs who lived nearby, he qualified his testimony at one point, by stating:
I wouldn't expect Exxon Pipeline employees that were working in the areas along Burton Road where the levels were below 100 ppm to elicit any type of health effects. And if you consider the distance of the residents from that location, then I wouldmy opinion would be that they also would not have health effects associated with elevated hydrocarbon exposure because the elevated hydrocarbons would not be there.
*160 As we noted in Standeford v. Winn Dixie,[5] it is well settled that an expert witness should not be permitted to testify beyond his expertise. In this case, however, the trial court specifically noted that it would not consider Nowosiwsky's testimony in any other light than that of an industrial hygienist. Also the opinion testimony by Nowosiwsky regarding the plaintiffs' exposure appeared to be directly related to and based upon his testimony regarding the lack of harm to the Exxon employees who cleaned up the oil spill, for which he was qualified to testify. Accordingly, we find no error in the trial court's decision to allow the entirety of Nowosiwsky's testimony.
In their second assignment of error, plaintiffs contend that the trial court committed manifest error in finding that the plaintiffs did not sustain any injury or nuisances for which the defendant is liable and that the plaintiffs are not entitled to any damages.
The trial court's factual findings and credibility determinations are entitled to great weight and will not be disturbed on appeal absent manifest error.[6] When findings are based on determinations regarding the credibility of witnesses, the manifest error clearly wrong standard demands great deference to the trier of fact's findings.[7] Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong.[8]
In this case, each of the ten bellwether plaintiffs testified at trial regarding the alleged damages that they sustained as a result of the crude oil spill. The claimed damages were distinguished as two types: physical injury and nuisance resulting from the alleged odor emitted by the crude oil. Although there was testimony that the plaintiffs had experienced a range of adverse physical effects, it was established that not a single plaintiff had undergone any sort of medical treatment for those alleged effects. Furthermore, as the trial court noted in its oral reasons for judgment, plaintiffs did not provide any expert testimony on their behalf which established medical causation between the oil spill and alleged physical effects resulting from the spill. As Exxon correctly points out in its brief, "when the conclusion regarding medical causation is not one within common knowledge, expert medical testimony is required."[9]
While the plaintiffs did not produce expert testimony on the issue of physical damages, Dr. William George, Director of Toxicology at the Tulane School of Medicine, testified on behalf of Exxon. It was Dr. George's opinion that the low level of hydrocarbon vapors could not have produced the adverse health effects the plaintiffs complained of. Based on the lack of evidence presented in support of plaintiffs claim for physical damages, we cannot say that the trial court committed manifest error in finding that the plaintiffs had failed to establish causation and damages by a preponderance of the evidence.
The plaintiffs next urge under this assignment that the trial court failed to apply *161 the proper legal framework regarding whether any nuisance was sustained by the plaintiffs on their respective properties. Specifically, the plaintiffs assert that the trial court failed to apply the juridical test to determine whether the plaintiffs suffered real damage as opposed to mere inconvenience. Plaintiffs argue that integral to the court's analysis should have been a consideration of the character of the neighborhood and the degree of intrusion. Exxon argues however, that the district court did evaluate the plaintiffs claims pursuant to the proper framework, but that the trial court properly found that the plaintiffs were unable to prove that a legally cognizable intrusion occurred.
In Barrett v. T.L. James & Co.,[10] a case relied upon by the plaintiffs, the court stated the following in regard to nuisance claims:
While the owners of property are not required to suffer damage as a result of the works undertaken on their neighbor's property, the law has decreed that certain inconveniences must be tolerated. The extent of the inconvenience the property owner must tolerate without redress depends upon the circumstances. When the actions or work cease to be inconveniences and become damaging is a question of fact. King v. Western Club, Inc., 587 So.2d 122 (La. App. 2d Cir.1991); Hobson v. Walker, 41 So.2d 789 (La.App. 2d Cir.1949). The fact finder's decision in a nuisance case cannot be overturned in the absence of manifest error. Barras v. Hebert[,,602 So.2d 186 (La.App. 3d Cir.1992.)], supra.
Plaintiff has the burden of proving every essential element of his tort case, including cause-in-fact, by a preponderance of the evidence.[11] Causation is a fact specific inquiry. Great deference must be accorded the trier of fact on the question of factual causation.[12] When findings are based on determinations regarding the credibility of witnesses, the manifest error clearly wrong standard demands great deference to the trier of fact's findings, because only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said.[13]
At trial, the claims of nuisance were supported only by plaintiff testimony that the odor from the crude oil disrupted various outdoor activities in which the plaintiffs were engaged, and permeated some homes for two to three days. At the conclusion of the trial, however, as with the medical claims, the court found that the nuisance claims made by the plaintiffs were not corroborated by any other evidence. Apparently the court also did not find that the plaintiffs testimony established that real damage had occurred in this case. Based upon our review of the record, we cannot say that the trial court committed manifest error its finding that the plaintiffs had not proved their nuisance claim by a preponderance of evidence.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] Mitchell v. Popiwchak, 95-1423 (La.App. 4th Cir.6/26/96), 677 So.2d 1050, 1054.
[2] Bourgeois v. Arrow Fence Co., Inc., 592 So.2d 445, (La.App. 5 Cir.1991),; writ denied, 596 So.2d 214, (La.1992).
[3] Bordelon v. Drake, 578 So.2d 1174, (La.App. 5 Cir.1991).
[4] Stobart v. State, Through DOTD, 617 So.2d 880, 882 (La.1993).
[5] 96-088 (La.App. 5 Cir. 12/30/96), 688 So.2d 602; writ denied, 97-0285, 691 So.2d 85, (La.3/21/97); writ denied, 97-0305, 691 So.2d 87, (La.3/21/97).
[6] Crane v. Diamond Offshore Drilling, Inc., 99-166 (La.App. 5 Cir. 9/15/99), 743 So.2d 780, 791.
[7] Id.
[8] Braithwaite v. City of Kenner, 93-1016 (La. App. 5 Cir. 4/26/94), 636 So.2d 1094, 1095; writ denied, 644 So.2d 653, (La.1994).
[9] Hutchinson v. Shah, 94-0264, (La.App. 1 Cir. 12/22/94), 648 So.2d 451; writ denied, 95-0541, 653 So.2d 570, (La.4/21/95).
[10] 28,170 (La.App. 2 Cir. 4/3/96), 671 So.2d 1186, 1191; writ denied, 96-1124, 674 So.2d 973, (La.06/07/96).
[11] Lasha v. Olin Corp., 625 So.2d 1002, 1005 (La.1993); on remand at, 91-459 (La.App. 3 Cir. 03/02/94), 634 So.2d 1354.
[12] Hill v. Abraham, 00-327 (La.App. 5 Cir. 9/27/00), 770 So.2d 824, 828.
[13] Crane v. Diamond Offshore Drilling, Inc., supra.