WALTER J. ROTHSCHILD, Judge.
|2In this class action litigation, plaintiffs appeal the trial court’s judgment in favor of defendant, E.I. DuPont deNemours and Company (hereinafter referred to as “Du-pont”), in which the trial court found that plaintiffs did not meet their burden of proof at trial and dismissed their claims against defendant. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY

The named plaintiffs in this litigation are Michael Johnson, Sandra Johnson, Carol Lennix, Lathaniel Lennix, Louis Lennix, Jr., Brad Arceneaux, Eric Arcen-eaux, and Roland Arceneaux. On August 9, 1994, plaintiffs filed a Class Action Petition, alleging that earlier that day, at approximately 12:30 p.m., an explosion and release of toxic chemicals occurred at the Dupont facility in Reserve, Louisiana, causing them to suffer damages. According to Dupont, this incident occurred when a fiberpack drum of waste paint was fed into the rotating |3solids waste incinerator at the facility. The waste paint contained an amount of free liquid, which caused a pressure release at the rotating seal of the kiln, resulting in the release of a puff of smoke and an explosion or “pop” sound. Plaintiffs claim that after they heard the explosion, they began to smell fumes and they suffered symptoms, such as nausea, eye or skin irritation, headaches, coughing, and throat irritation. After the incident, plaintiffs were advised by their attorney to report to River Parishes Hospital for treatment and they did so.
On September 24, 1997, the trial judge certified this matter as a class action and set its geographic boundaries, and the ruling was affirmed by this Court. Johnson v. E.I. Dupont deNemours and Company, Inc., 98-229 (La.App. 5 Cir. 10/14/98), 721 So.2d 41, 44. On May 4, 2000, the parties filed a Stipulation in which Dupont stipulated to liability but reserved its right to trial on the issues of damages, causation of any alleged damages or injuries, the nature of the materials released, and the area allegedly affected. In the Stipulation, plaintiffs waived any and all claims for punitive damages. After several years, *738 trial of this matter was finally held on April 24 and 25, 2006.
At trial, each of the named plaintiffs testified either live or via his deposition. Plaintiffs testified that on August 9, 1994, they lived on East 30lh Street in Reserve, Louisiana, or were present there, when they heard a loud explosion coming from the Dupont facility. After a short time, they noticed a smell in the air that was irritating and they began to have symptoms, such as nausea, eye or skin irritation, and headaches. One of the plaintiffs, Carol Lennix testified that she called Du-pont and thereafter, representatives from Dupont came to her home to discuss what had happened. Some neighbors also got together and decided to see an attorney. After discussing the matter with their attorney, plaintiffs went to River Parishes Hospital, and most of them later followed up with |4Pr. Raul Reyes. Plaintiffs testified that their symptoms resolved within a relatively short period of time, some that day and some within a couple of days or a week.
Dr. Raul Reyes was called by plaintiffs, and he was accepted as an expert in field of general medicine with experience in treating people who may have some type of chemical exposure. He testified that he treated each of the named plaintiffs, except Louis Lennix and Lathaniel Lennix. Dr. Reyes stated that he diagnosed plaintiffs with fume inhalation, but his diagnosis was primarily based on the history given by plaintiffs. He did not notice objective symptoms for any of the plaintiffs, except Michael Johnson who had a discharge from his eye. He did not prescribe any medication or provide any specific treatment to plaintiffs, because their complaints were not severe. He further testified that he was told by plaintiffs that they had been involved in a chemical explosion, but he did not know what chemi-the cal they were exposed to and- could not provide any testimony on medical causation.
Richard Guidry, who was employed by Dupont as a chemist in the Environmental Department at the time of the accident, testified that he heard about the incident within a few minutes because he got a phone call. Although he was about 100 yards from the incinerator at the time of the incident, he did not hear the explosion, did not smell anything, and did not experience nausea, headaches, eye irritation, or other symptoms. He investigated to see if the amount of chemicals released was a quantity that had to be reported to the Department of Environmental Quality (“DEQ”), and it was not, but he made a courtesy call to DEQ the next day nonetheless. He identified the Material Safety Data Sheet (“MSDS”), which listed the constituents contained in the waste paint that was fed into the incinerator. Based on the investigation, he determined that a small amount of pressure caused a puff of smoke to escape, but it was insignificant and did not even shut down the He determined that less than one pound of material was released into the atmosphere, based on the fact that it was a very small cloud of smoke according to four or five operators at the incinerator, and it dissipated within a few feet of the kiln. I «incinerator.
Clarence Dykstra, the safety, health, and environmental manager for Dupont in 1994, testified that he was at the Dupont facility when the incident occurred, and he did not smell anything or have any symptoms, such as nausea, headaches, eye or skin irritation, or throat irritation. Darnell Hai'per, an operator in the incinerator area at Dupont in 1994, testified that at the time of the incident, he was in the control room, which is 100 or so yards from the incinerator. He stated that when *739 he heard a loud pop, he headed toward the incinerator and saw a puff of smoke that came from the stack in the incinerator and lasted seven to ten seconds before it dissipated. He stated that the puff of smoke did not cross Dupont’s fence line into the neighborhood. He also indicated that he did not experience any symptoms, such as nausea, headaches, or burning eyes. He stated that he went into the neighborhood with his supervisor, Jerry Matthews, to see if he could smell anything and to talk to the neighbors, but he did not smell anything, and he stated that the neighbors did not initially seem upset.
Dr. Sukh Sidhu, who was accepted as an expert in environmental and combustion engineering, was called to testify. After being retained by defendant, he visited the solids waste incinerator site and reviewed documents and materials regarding the incident, including materials that identified the types of materials that were fed into the incinerator. He stated that based on the information he received, an amount of solvent was put into a 35-gallon fiberpack drum, and the solvent was to be soaked up by the sawdust. However, there was some freestanding liquid that was not absorbed by the sawdust, which vaporized and ignited, causing the | ^pressure release that resulted in the “pop” sound. Because the exact composition of the waste paint was not known, Dr. Sidhu reviewed the eight possible organics listed on the MSDS and made his calculations using the highest possible concentration of organic compounds for the puff of smoke released, which would have been the worst-case scenario and would have indicated the exposure levels for someone standing directly over the incinerator. Dr. Sidhu determined that the puff of smoke would only have been 50 cubic feet, and the maximum amount of organics that could have been in the puff was 0.18 %, with the remaining 99.8% consisting of water and carbon dioxide.
Dr. Glenn Millner was accepted as an expert in toxicology and risk assessment. After being retained by defendant, he reviewed materials related to the incident, including plaintiffs’ medical records, interrogatories, depositions, incident reports, and studies. He opined that there would have been some objective evidence of eye, nose, or throat irritation after the accident, if those symptoms were present, but the medical records from River Parishes Hospital did not show any objective findings. He further noted that the duration of symptoms among the plaintiffs was inconsistent, so he did not believe that their health claims were temporally related to the incident. He also reviewed the MSDS and Dr. Sidhu’s calculations. He testified that based on the concentration levels, even if plaintiffs had been standing on the stack when the puff of smoke was released, he would not have expected to see any health effects. Dr. Millner testified that someone is not necessarily exposed to chemical levels that cause adverse health effects simply because he can smell a chemical. He further opined that based on the lack of objective medical findings and lack of sufficient exposure, plaintiffs claims “don’t make sense.”
17Pefendant also called Dr. Douglas Swift, an occupational physician at East Jefferson General Hospital, and he was accepted as an expert in general medicine and occupational medicine. After reviewing the medical records, expert reports, MSDS, depositions, and other documents, he did not see evidence of any injury or illness that he could relate to any possibility of exposure to the puff of smoke from Dupont. He noted the lack of objective physical findings in the medical records from River Parishes Hospital and Dr. Reyes, and he opined that Dr. Reyes did *740 not collect sufficient information to meet most people’s standards in medical toxicology and arrive at a diagnosis, other than a historical diagnosis, which is what he presented. He further stated that plaintiffs did not report dizziness or being lightheaded, which should have been present with reports of irritation due to chemicals. Although one plaintiff, Michael Johnson, had watery eyes when he saw Dr. Reyes nine days after the accident, based on the information he reviewed, Dr. Swift opined that this could not have been related to the incident.
On September 1, 2006, the trial judge rendered a judgment in favor of Dupont, dismissing plaintiffs’ claims against it. The trial judge found that plaintiffs did not meet their burden of proving causation, because they failed to show that they were exposed to harmful levels of chemicals, failed to produce scientific or medical evidence that their injuries were a result of the chemicals released by defendant, and failed to present expert testimony to contradict or refute the testimony presented by defendant’s exerts. On September 13, 2006, plaintiffs filed a Motion for New Trial, which was denied by the trial judge after a hearing. Plaintiffs now appeal.

LAW AND DISCUSSION

In their first assignment of error, plaintiffs argue that the trial court erred in failing to award damages to them where the evidence establishes that they |ssustained physical injuries and symptoms as a result of the release from Dupont. Dupont responds that, based on the testimony and evidence presented, the trial court correctly found that plaintiffs failed to meet their burden of proof.
In a tort action, the plaintiff bears the burden of proving fault, causation, and damages. Wainwright v. Fontenot, 00-492, p. 5 (La.10/17/00), 774 So.2d 70, 74. The plaintiff bears the burden of proving every element of his case, including the cause-in-fact of damage, by a preponderance of the evidence, that is, whether it is more likely than not that the harm was caused by the tortious conduct of one or more defendants. Lasha v. Olin Corp., 625 So.2d 1002, 1005 (La.1993); Milazzo v. Olsten Home Health Care, Inc., 97-30, p. 8 (La.App. 5 Cir. 1/28/98), 708 So.2d 1108, 1112, writ denied, 98-501 (La.4/3/98), 717 So.2d 232. When a conclusion regarding medical causation is not one within common knowledge, expert medical testimony is required in a tort action. Hutchinson v. Shah, 94-264, p. 3 (La.App. 1 Cir. 12/22/94), 648 So.2d 451, 452, writ denied, 95-541 (La.4/21/95), 653 So.2d 570.
In the present case, although Dupont admitted to liability, it was plaintiffs’ burden to establish that the chemical release at Dupont caused them to suffer injuries. At trial, plaintiffs testified that they heard an explosion and subsequently began experiencing symptoms, such as nausea, eye or skin irritation, coughing, throat irritation, and headaches. Although plaintiffs were diagnosed with fume inhalation and chemical exposure, these diagnoses were based primarily on the history or information given by plaintiffs. Further, whether or not plaintiffs suffered injuries as a result of chemical exposure from the Dupont incident is not a determination based on common knowledge, so the plaintiffs were required to present expert medical testimony in order to meet their burden of proving medical causation. However, the only medical expert presented by plaintiffs was Dr. Raul |nReyes, who testified that he could not provide any testimony regarding medical causation.
Defendants, on the other hand, presented expert witnesses in support of their position that plaintiffs did not suffer injuries as a result of the August 9, 1994 incident. Dr. Swift, an expert in general *741 and occupational medicine, testified that based on the documents he reviewed, including the medical records which indicated a lack of objective findings, he did not see evidence of injury or illness that could possibly have been related to the puff of smoke from the Dupont facility. In addition, Dr. Glenn Millner, an expert in toxicology and risk assessment, testified that based on the materials he reviewed regarding the incident, including Dr. Sidhu’s calculations and plaintiffs’ medical records, he did not believe that plaintiffs suffered any health effects due to the Dupont incident and found that their claims did not “make sense.”
 The finder of fact is required to assess the credibility of both expert and lay witnesses to determine the most credible evidence. Magee v. Pittman, 98-1164, p. 12 (La.App. 1 Cir. 5/12/00), 761 So.2d 731, 742, writ denied, 00-1684 (La.9/22/00), 768 So.2d 602. The appellate court applies the manifest error standard in deciding conflicts between expert and lay testimony. St. Martinville, L.L.C. v. Louisiana Tax Commission, 05-457, p. 8 (La.App. 1 Cir. 6/10/05), 917 So.2d 38, 44. In applying the manifest error standard of review, the appellate court must determine not whether the factfinder was right or wrong, but whether his finding was a reasonable one. Id.; Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 883 (La.1993)
After reviewing the entire record in this matter, considering the trial court’s credibility determinations, and noting plaintiffs’ lack of expert medical testimony regarding causation, we cannot say that the trial judge erred in finding that |inplaintiffs failed to prove that they were exposed to harmful levels of chemicals and that they failed to provide sufficient evidence to establish that they suffered injuries as result of the Dupont incident. Accordingly, because plaintiffs have failed to prove causation in this matter, this assignment of error is without merit.
In their second assignment of error, plaintiffs contend that the trial court erred by requiring plaintiffs to be sequestered during the trial of this matter. They assert that parties to a lawsuit are entitled to attend their own trial and to observe the testimony of the witnesses. Dupont responds that it was appropriate to sequester plaintiffs from the courtroom until they gave their testimony, because liability had been stipulated to.
LSA-C.E. art. 615 provides, in pertinent part, as follows:
A. As a matter of right. On its own motion the court may, and on request of a party the court shall, order that the witnesses be excluded from the courtroom or from a place where they can see or hear the proceedings, and refrain from discussing the facts of the case with anyone other than counsel in the case. In the interests of justice, the court may exempt any witness from its order of exclusion.
B. Exceptions. This Article does not authorize exclusion of any of the following:
(1) A party who is a natural person.
The purpose of the sequestration article is to prevent witnesses from being influenced by the testimony of earlier witnesses, and to strengthen the role of cross-examination in developing the facts. State v. Doleman, 02-957, p. 11 (La.App. 4 Cir. 12/4/02), 835 So.2d 850, 858, writ denied, 02-3101 (La.9/19/03), 853 So.2d 633. Pursuant to LSA-C.C.P. art. 1631(A), the trial court has the power to require that the proceedings be conducted with dignity and in an orderly and expeditious manner, and to control the proceedings at trial so that justice is done.
*742 At the beginning of trial, counsel for plaintiffs moved for sequestration of the witnesses. The trial court granted the request. Thereafter, counsel for Dupont moved to sequester plaintiffs, arguing that liability had already been stipulated to _[iJand that each plaintiff was now pursuing only them individual claims for their own damages. Although counsel for plaintiffs objected, the trial court granted Dupont’s request, stating, “I do not believe that the plaintiffs will be at any disadvantage since liability has been stipulated to the matter.”
The trial court has great discretion in the manner in which proceedings are conducted, and it is only upon a showing of gross abuse of discretion that appellate courts have intervened. Dugas v. Automotive Cas. Ins. Co., 98-807, p. 4 (La.App. 5 Cir. 2/10/99), 729 So.2d 25, 27. Although LSA-C.E. art. 615 does not authorize the exclusion of a party from the courtroom, we do not find that a gross abuse of discretion has occurred in the instant case. First, liability was no longer an issue at the time of trial, because Dupont had admitted to the chemical release and stipulated to liability, with causation and damages only to be litigated. Further, this is a class action in which each plaintiff appeared to testify to their own individual damage claims. Also, there were eight named plaintiffs, two of which testified via their depositions. Of the remaining six named plaintiffs, five of them were the first five witnesses to testify at trial, and after each plaintiff testified, he or she was permitted to remain in the courtroom. Accordingly, we agree with the trial court that plaintiffs did not suffer any disadvantage or prejudice from being included in the sequestration order, and we will not disturb the trial court’s judgment on this basis.
In their third assignment of error, plaintiffs contend that the trial court erred in allowing defendant’s experts to testify in fields that were not timely disclosed in their answers to discovery. Plaintiffs argue that in the discovery they propounded to defendant over 10 years prior to the trial, they specifically requested the names of defendant’s witnesses who conducted an investigation or air modeling in this matter, but Dupont did not disclose the experts they would use when they 112answered discovery in October 1995. Plaintiffs further argue that Dr. Sidhu, Dr. Millner, and Dr. Swift were not identified as experts in air modeling and they should not have been allowed to testify in that field. Finally, they claim that defendants failed to call an air modeler at trial to contradict the testimony of plaintiffs who testified that chemicals blew right at them from the Dupont facility.
First, the Pre-Trial Order dated June 29, 2005 required the parties to employ all experts and disclose the names and addresses of these witnesses in writing no later than March 24, 2006. In its “May Call Witness List” faxed to the Clerk of Court on March 24, 2006, Dupont listed the expert witnesses that were later called at trial. The fact that these witnesses were not identified in answers to discovery in 1995, over ten years prior to trial, is of no moment.
In addition, although plaintiffs claim that Dupont’s witnesses were improperly allowed to testify regarding air modeling, our review of the testimony reveals that this was not the case. Further, although plaintiffs argue that defendant should have been required to call an air modeler to contradict the testimony of plaintiffs, we find this ai'gument incorrect and unpersuasive. As stated above, it was plaintiffs’ burden to provide sufficient evidence in support of their claims. Plaintiffs failed to do so. We find no merit in plaintiffs’ argument that Dupont was required to *743 produce an air modeler at trial. Based on the foregoing, plaintiffs’ third assignment of error is without merit.
In their fourth assignment of error, plaintiffs argue that the trial court erred in allowing witnesses to testify to their opinions in fields in which they were not qualified. They claim that Clarence Dykstra should not have been allowed to testify regarding the off-site impact or level of severity of the explosion. They assert that Darnell Harper should not have been permitted to testify as to the medical conditions of plaintiffs.
|1sFirst, Clarence Dykstra, the safety, health, and environmental manager for Dupont in 1994, was not offered as an expert at trial. He was in charge of Du-pont’s investigation into the incident and he concluded, based on the data compiled during the investigation, that there would have been no off-site impact caused by the chemical release. We find no error in the trial court allowing Mr. Dykstra to testify regarding the findings of Dupont’s internal investigation. With regard to Darnell Harper, at trial, he was asked if he observed any symptoms in the neighborhood residents, such as coughing, skin redness, watery eyes, when he went into the neighborhood to talk to them and investigate. Mr. Harper indicated that he did not notice any such symptoms. We find no error in allowing this testimony. Dupont did not purport to offer Mr. Harper as a medical expert, and he could certainly testify from his own observation whether he noticed the symptoms complained of.
Plaintiffs also contend that Dr. Sidhu did not have experience dealing with kilns that burn paint, and that they properly objected to his qualifications. They also set forth testimony from Dr. Millner and Dr. Swift, and they claim that neither of these witnesses presented compelling, competent, or scientifically sound testimony.
The trial court has great discretion whether to qualify an expert witness and has wide latitude to determine whether an expert has the competence, background, and experience to qualify. Schexnayder v. Exxon Pipeline Co., 01-1236 (La.App. 5 Cir. 3/13/02), 815 So.2d 156, 159. Once the expert is permitted to testify in his field, the trier of fact has great discretion to accept or reject the expert’s opinion, which goes to the credibility of the witness. Id. A trial court’s decision to qualify an expert witness will not be overturned absent an abuse of discretion. Cheairs v. ┴14State ex rel. Department of Transp. and Development, 03-680, p. 6 (La.12/3/03), 861 So.2d 536, 541.
At trial, Dupont’s experts were questioned on them qualifications and accepted as experts in them particular fields. We find no abuse of discretion in the trial court’s decision to accept these witnesses as experts. Further, our review of the testimony of each of these witnesses reveals that the trial court did not improperly allow any expert to testify beyond the scope of his expertise. Considering the arguments of counsel and the applicable law, we find that this assignment of error is without merit.

DECREE

For the foregoing reasons, we affirm the September 1, 2006, judgment of the trial court in favor of Dupont, dismissing plaintiffs’ claims against it. We also affirm the trial court’s judgment denying plaintiffs’ Motion for New Trial.

AFFIRMED.