LILJEBERG, J.
*1009 In this personal injury action, plaintiff appeals the trial court's judgment, rendered in accordance with the jury's verdict, dismissing his claims against all defendants with prejudice. For the following reasons, we affirm.
STATEMENT OF THE CASE
This case arises from a motor vehicle accident that occurred in St. James Parish on November 24, 2014. According to plaintiff, Richard Palmer, he was traveling eastbound on LA-70 over the Sunshine Bridge when traffic congestion caused him to come to a stop. Suddenly, a pickup truck driven by defendant, Michael Smith, struck the vehicle behind Mr. Palmer, which in turn struck Mr. Palmer's vehicle. At the time of the accident, Mr. Smith was working for UV Logistics, L.L.C. ("UV Logistics"), which was insured by UV Insurance Risk Retention Group, Inc. ("UV Insurance") and American Zurich Insurance Company ("AZIC").
On November 5, 2015, Mr. Palmer filed this lawsuit against Mr. Smith, UV Logistics, and UV Insurance, asserting that he sustained serious back, leg, and hip injuries as a result of this accident. On January 23, 2017, Mr. Palmer filed a First Supplemental and Amending Petition adding AZIC as a defendant.[1]
On January 26, 2017, Mr. Smith and UV Logistics filed a "Stipulation of Liability" into the record, indicating that they accepted full responsibility and liability for the motor vehicle accident that occurred on November 24, 2014. Mr. Smith and UV Logistics indicated that they would continue to contest all other issues, such as whether Mr. Palmer sustained any injuries as a result of the accident.
This matter proceeded to a jury trial, which began on November 14, 2017, and concluded on November 17, 2017. At the conclusion of trial, the jury returned a verdict in favor of defendants, finding that Mr. Palmer did not meet his burden of proving that he was injured as a result of the November 24, 2014, motor vehicle accident. On December 20, 2017, the trial judge signed a judgment in accordance with the jury's verdict, dismissing Mr. Palmer's claims against all defendants with prejudice. Mr. Palmer appeals.
LAW AND DISCUSSION
On appeal, Mr. Palmer argues that he did not receive a fair and impartial trial. He sets forth five assignments of error, claiming that the trial court's judgment rendered in accordance with the jury's verdict should be overturned.
In his first assignment of error, Mr. Palmer argues that the trial court abused *1010 its discretion by failing to strike four prospective jurors for cause. He argues that the four prospective jurors, Charles Core, Guy Schexnayder, Chad Bourgeois, and Jordan O'Bryant, all indicated that they were opposed to lawsuits for personal injuries, three of them indicated that they would not be able to apply the preponderance of the evidence standard to the facts of this case, and two of them acknowledged that they would have difficulty being fair. Mr. Palmer contends the responses of these prospective jurors, when viewed in context of the overall voir dire examination, were disqualifying, and his challenges for cause should have been granted. We note that none of these four prospective jurors was seated on the jury, as plaintiff used peremptory challenges to strike them.[2]
Defendants respond that the challenges for cause were properly denied. They contend that plaintiff's counsel purposefully attempted to put a different standard of proof than a preponderance of the evidence in the prospective jurors' minds. They argue that the responses from prospective jurors of which plaintiff now complains were the result of plaintiff's counsel's continued questioning about how they felt about the preponderance of the evidence standard. Defendants assert that plaintiff's counsel insinuated that the prospective jurors had the option of applying a different standard of review than the standard instructed by the court.
La. C.C.P. art. 1765(2) provides that a juror may be challenged for cause when he "has formed an opinion in the case or is not otherwise impartial, the cause of his bias being immaterial." A trial judge is vested with broad discretion in ruling on challenges for cause, and the appellate court should not disturb its ruling unless the voir dire as a whole indicates an abuse of discretion. Riddle v. Bickford , 00-2408 (La. 5/15/01), 785 So.2d 795, 801 ; Simms v. Progressive Ins. Co. , 38,804 (La. App. 2 Cir. 9/29/04), 883 So.2d 473, 479, writ denied , 04-2871 (La. 1/28/05), 893 So.2d 78.
If a prospective juror is able to state to the trial court's reasonable satisfaction that he could render an impartial verdict according to the law and evidence, a challenge for cause to that juror is properly denied. Scott v. American Tobacco Company , 01-2498 (La. 9/25/01), 795 So.2d 1176, 1182. However, a challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice, or inability to render judgment accordingly may be reasonably implied. Id. , citing State v. Hallal , 557 So.2d 1388, 1390 (La. 1990). A prospective juror's seemingly prejudicial response is not grounds for an automatic challenge for cause, and the denial of such a challenge is not an abuse of discretion, if after further questioning the prospective juror demonstrates a willingness and ability to decide the case impartially according to the law and evidence. State v. Castillo , 13-552 (La. App. 5 Cir. 10/29/14), 167 So.3d 624, 639, writs denied , 14-587 (La. 11/7/14), 152 So.3d 172 and 14-2567 (La. 9/18/15), 178 So.3d 145.[3]
Shortly after questioning of the prospective jurors began, the trial judge stated:
At the conclusion of the evidence, I will instruct you on the law applicable to this *1011 case. You must apply the law as I instruct you to the facts as you find them.
The trial judge then asked:
Will you follow the law as I give it to you? Does anyone here think they cannot follow the law once I give the instructions?
The transcript reflects that none of the prospective jurors indicated that he or she could not follow the law as instructed.
Later, during his questioning of prospective jurors in the first panel, plaintiff's counsel noted that the burden of proof in criminal cases is "beyond a reasonable doubt" and asked how the prospective jurors felt about the burden of proof in this civil matter being "only more probably than not" and "if we're right 51 percent on a particular issue, then we are supposed to win on that issue." After questioning individual jurors regarding how they felt about this standard, at a bench conference, counsel for AZIC complained that he believed plaintiff's counsel was "putting in the jurors' minds a different standard of proof" and asking them if they would prefer "beyond a reasonable doubt." The trial court then stated to the jury:
And, ladies and gentlemen, I'm going to go ahead and instruct you at this time. [Plaintiff's counsel] has asked you a few questions about the burden of proof. At the conclusion of this trial, I will give you an instruction as to what the law is that you must follow. The question is, 'Are you able to follow the law as I give it to you?' Even though your personal preferences may be different, do you believe that you can follow the law?
Is there anyone here that feels like your feelings are so strong that you would not follow the law as I give it to you? Okay. All right. Thank you.
The record does not reflect that any prospective juror indicated that he could not follow the law as instructed.
With regard to prospective juror Guy Schexnayder, plaintiff argues that he should have been excused for cause, because he stated that he would need a "90 percent" level of proof. The record reflects that Mr. Schexnayder was asked how he felt about the standard of proof being "only more probably than not," and he initially replied that he did not know. When asked if he believed any lawsuits are legitimate, Mr. Schexnayder replied, "it all depends." When plaintiff's counsel questioned him further, Mr. Schexnayder stated that it was "not in [his] build" to file a lawsuit. In response to plaintiff's counsel's questioning regarding the standard of proof, Mr. Schexnayder at one point agreed with counsel that he would need "90 percent." However, Mr. Schexnayder also replied, "it depends," when plaintiff's counsel asked, "[i]f we prove 51 percent...you probably wouldn't be able to do that?" When the trial court asked if they could follow the law as provided to them by the trial court, "[e]ven though [their] personal preferences may be different," Mr. Schexnayder and the other prospective jurors did not indicate that they could not follow the law as instructed.
Our review of all of Mr. Schexnayder's responses during voir dire shows that while Mr. Schexnayder may prefer a higher standard of proof, he agreed that he would be able to follow the law as instructed by the trial court. Accordingly, based on his responses as a whole, we cannot say the trial court abused its broad discretion in denying this challenge for cause.
With regard to prospective juror Charles Core, Mr. Palmer asserts that the trial court should have granted his challenge for cause, because while he expressly acknowledged that he would follow the *1012 law, he could not reconcile the fact that Mr. Palmer would not be held to a higher standard of proof, such as beyond a reasonable doubt.
Mr. Core indicated that he was in the insurance industry for over twenty years. When asked by plaintiff's counsel whether he felt that there were a lot of frivolous lawsuits, Mr. Core agreed and added that they "hurt the legitimate ones." While Mr. Core also expressed some skepticism about rear-end collisions with little property damage, he indicated that each case should be reviewed individually. Mr. Core stated that he had never been on a jury before and he had just assumed that a case had to be proven beyond a reasonable doubt. He also stated that it would be hard to make a decision "on 51 percent proof" and agreed that he would need greater than 51 percent. However, the trial court asked the prospective jurors if they could follow the law as given by the trial court and the panel agreed. In response to further questioning by plaintiff's counsel, Mr. Core indicated that it would be tough, but he would "follow the law, of course, and [he] could make a decision." He also stated, "I'd have to see the facts of the case."
Mr. Core's responses suggest that while he believes there are many frivolous lawsuits, he also believes there are legitimate ones and that the facts of each case must be considered individually. Considering Mr. Core's responses during voir dire questioning as a whole, we cannot say that the trial court abused its broad discretion by denying the challenge for cause as to Mr. Core.
With regard to prospective juror Chad Bourgeois, plaintiff argues that he should have been excused for cause because he viewed this personal injury case in a negative light from the beginning and he indicated that Mr. Palmer would have to prove his case by more than 51 percent. In response to questioning by plaintiff's counsel, Mr. Bourgeois indicated that he believes there are many frivolous lawsuits. He stated that he did not know if he could personally file a civil lawsuit for injuries even if he was paralyzed. When asked by plaintiff's counsel about the standard of proof, Mr. Bourgeois said, "It's either 'yes' or 'no,' " and "You've got to be totally convinced in my mind." However, it was shortly after this exchange that the trial court explained to the prospective jurors that the court would instruct the jurors as to the law they must follow, and asked if anyone's feelings were so strong that he could not follow that law as given to the jury. As with the other prospective jurors, Mr. Bourgeois did not indicate that he could not follow the law as instructed. Considering all of Mr. Bourgeois' responses during voir dire , we find no abuse of the trial court's discretion in denying this challenge for cause as to Mr. Bourgeois.
Finally, with regard to prospective juror Jordan O'Bryant, during questioning by plaintiff's counsel, he indicated that a fraudulent lawsuit had been filed against him. However, he also acknowledged that he agreed "with legitimate ones." He also stated that it was "not in [his] upbringing" to file a lawsuit and that it would be "hard to agree with." However, in response to plaintiff's counsel's question as to whether he could "go with" plaintiff if he believed what plaintiff alleged was more probable than not, he replied, "Yeah." Based on our review of Mr. O'Bryant's voir dire responses, the trial court did not abuse its discretion by denying the challenge for cause as to Mr. O'Bryant.
The trial court is afforded broad discretion in ruling on challenges for cause, because the trial court has the benefit of seeing the facial expressions and hearing the vocal intonations of the prospective *1013 jurors, which are not apparent at the appellate level when reviewing the record. Castillo , 167 So.3d at 639-640. Considering our review of the entire voir dire proceedings and all of the responses of these prospective jurors, we cannot say that the trial court abused its discretion in denying these challenges for cause. Although some prospective jurors' responses evidenced a preference for a higher burden of proof, in response to plaintiff's counsel's questions regarding how they felt about the burden of proof, each one of them acknowledged that they could follow the law as provided by the trial court. This assignment of error is without merit.
In his second assignment of error, Mr. Palmer asserts that the trial court erred by allowing testimony from Mr. Palmer's former wife for the sole purpose of impeachment and because it was protected by the spousal confidential communications privilege. Defendants respond that they did not introduce the statements at issue at trial and further, even if they had, the statements were not confidential communications.
Prior to trial, defense counsel took a recorded statement from Mr. Palmer's former wife, Brenda Palmer, in which she stated that Mr. Palmer complained about hip and back pain "all the time" when they were together, which was prior to the accident at issue. Ms. Palmer later recanted via email and in her deposition, asserting that her statement that Mr. Palmer complained of back pain during their marriage was untrue.
Mr. Palmer filed a motion in limine seeking to exclude or limit testimony, evidence and/or argument at trial concerning statements of Ms. Palmer on the grounds that they were being offered for impeachment purposes and that they were confidential communications during their marriage which are privileged under La. C.E. art. 504(B). The trial court denied plaintiff's motion.
At trial, defense counsel did not call Ms. Palmer as a witness or introduce her statement or her deposition into evidence. However, Mr. Palmer contends that he was prejudiced because defense counsel mentioned Ms. Palmer's statement during opening statements.
Although plaintiff complains that defense counsel told the jury about Ms. Palmer's statement, without mentioning it was recanted, the record shows that it was actually plaintiff's counsel who initially mentioned Ms. Palmer's statement. During his opening statement, plaintiff's counsel stated:
...so, what were his preexisting issues? Mr. Palmer will tell you that he had hip pain prior to the wreck. When he would work, his hip would bother him, and it happened occasionally. You'll hear from his wife who says that he had hip pain. You'll also hear from his wife on a prior statement that she gave before the deposition where she says he had hip and back pain. She recanted that. She tried to do that before taking the deposition. She is going to testify at a trial deposition, so ya'll are going to have to say, "Well how much is she telling the truth? Was she lying?" You know, that's going to be up to ya'll.
Thereafter, during defense counsel's opening statement, he stated that Mr. Palmer indicated during his deposition that he had no back or hip pain prior to the accident. He then said:
So, I think I asked [an associate] in our firm, to take the statement of Mr. Palmer's ex-wife. "Ms. Palmer, did he ever have back pain, hip pain before this accident?" "Yes, he complained about it," quote, "all the time." "How many times a week?" "At least three." "Ms.
*1014 Palmer, are you sure about that?" "Yeah."
Prior to opening statements, the trial court gave some instructions to the jury, including:
The arguments that the lawyers will make to you in opening and closing statements are not evidence. Your decision on the facts must be based on the testimony and the evidence that you hear and see.
and
We are now ready for the lawyers to make opening statements. Remember that the statements the lawyers make now, as well as their closing arguments, are not evidence....
The trial court clearly explained to the jury that its decision had to be based on the testimony and evidence, not the arguments of counsel in opening statements. Further, plaintiff's counsel first mentioned Ms. Palmer's statement and indicated that she had recanted it. Defense counsel thereafter noted in his opening statement that Ms. Palmer had stated that Mr. Palmer had hip and back pain "all the time" before the accident. Considering the trial court's instructions, the fact that Ms. Palmer did not testify at trial and her statement and deposition were not introduced or admitted, and the fact that plaintiff's counsel mentioned Ms. Palmer's statement in his opening statements, we find no merit to plaintiff's argument that he suffered prejudice when defense counsel mentioned Ms. Palmer's statement in his opening statement.[4] Accordingly, we find no error by the trial court on this issue, and this assignment of error is without merit.
In his third assignment of error, Mr. Palmer argues that the trial court erred by allowing improper and irrelevant character evidence regarding his treating neurosurgeon, Dr. Anthony Ioppolo. He claims that this evidence was offered solely to impugn Dr. Ioppolo's character which is not allowed under La. C.E. art. 608. Defendants respond that such evidence was relevant and properly admitted under La. C.E. art. 607 to show bias or prejudice.
During cross-examination of Dr. Ioppolo, defense counsel asked if he was a member of the American Association of Neurological Surgeons ("AANS"), and Dr. Ioppolo responded affirmatively. Defense counsel then asked if the AANS had ever conducted a hearing and concluded that Dr. Ioppolo demonstrated a lack of adequate subject matter knowledge. Before defense counsel finished his question, plaintiff's counsel objected, arguing that any such finding would be irrelevant and prejudicial, and a bench conference ensued. During the conference, defense counsel stated that in a prior case, the AANS concluded that Dr. Ioppolo "[d]emonstrated a lack of adequate subject matter knowledge and acted as a [sic] advocate for the plaintiff and the plaintiff attorney rather than an unbiased witness, and in doing so he violated...the board's rules." Dr. Ioppolo was questioned outside the presence of the jury regarding this matter, explaining that he had testified in a medical malpractice trial fourteen years ago and the defense attorney subsequently filed a complaint about him to the AANS. After considering the arguments of counsel, the trial court indicated that it would allow questions regarding the recommendations of AANS to show that it is a pattern, but that the jurors should be informed how long ago this occurred.
*1015 When the jury returned, in response to defense counsel's questioning, Dr. Ioppolo admitted that he had testified in a medical malpractice case in Florida which resulted in a complaint being brought against him by the AANS in 2003. Dr. Ioppolo also agreed that the AANS rendered a conclusion that:
Dr. Ioppolo demonstrated a lack of adequate subject matter knowledge, acted as an advocate for the plaintiff and the plaintiff attorney rather than an unbiased witness, and in doing so, he violated AANS expert witness guidelines and the physician statement on testimony in professional liability cases.
Dr. Ioppolo added, however, that "there's more to the story than that" and offered additional information including that he was never sanctioned by the AANS.
Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." La. C.E. art. 401. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury, or by considerations of undue delay or waste of time. La. C.E. art. 403.
The trial court is vested with wide discretion in determining the relevancy of evidence, and its ruling will not be disturbed on appeal absent an abuse of that discretion. Hooker v. Super Products Corp. , 98-1107 (La. App. 5 Cir. 6/30/99), 751 So.2d 889, 909, writ denied , 99-2947 (La. 12/17/99), 751 So.2d 884. Likewise, the trial court's assessment of the probative value of evidence is afforded great weight and will not be disturbed in the absence of a clear abuse of discretion. Green v. Claiborne Elec. Co-op, Inc. , 28,408 (La. App. 2 Cir. 6/26/96), 677 So.2d 635, 639.
La. C.E. art. 607(A) provides that the credibility of a witness may be attacked by any party. La. C.E. art. 607(D)(1) provides that extrinsic evidence to show a witness' bias, interest, or corruption is admissible to attack the credibility of the witness. This Court has stated that witness bias is certainly a factor that may be considered by the jury in determining the weight to be given to testimony. See Gunn v. Robertson , 01-347 (La. App. 5 Cir. 11/14/01), 801 So.2d 555, 566, writs denied , 02-170 and 02-176 (La. 3/22/02), 811 So.2d 942.
On appeal, a reviewing court must consider whether the contested ruling was erroneous and whether the error affected a substantial right of the party. La. C.E. art. 103 ; Terry v. Simmons , 51,200 (La. App. 2 Cir. 2/15/17), 215 So.3d 410, 427. If not, reversal is not warranted. Id. The determination is whether the error, when compared to the record in its totality, has a substantial effect on the outcome of the case. Id.
At trial, Dr. Ioppolo testified regarding Mr. Palmer's injuries and related Mr. Palmer's disc herniation at L5 to the accident in this case. Defendants sought to discredit his opinion by eliciting testimony to show that Dr. Ioppolo is biased toward plaintiffs. He testified, without objection, that 60-70 percent of his income comes "from lawyers" or as "part of the litigation system." The trial court then allowed defense counsel to question Dr. Ioppolo regarding the AANS conclusion. Based on our review, we find no abuse of the trial court's discretion in allowing testimony regarding the AANS's conclusion that he previously acted as an advocate for the plaintiff in a medical malpractice case, in violation of AANS expert witness guidelines. This evidence could have properly been considered by the jury when determining *1016 the weight to be given to Dr. Ioppolo's testimony.
Even if we were to agree with plaintiff that the AANS's finding from approximately 14 years ago was not relevant, we cannot see that any such error affected a substantial right of Mr. Palmer. The testimony regarding Dr. Ioppolo's percentage of income arising from litigation was already admitted, suggesting that he had a bias or interest in plaintiff cases. Further, the record does not show that allowing this testimony had a substantial effect on the outcome of the case when compared to the totality of the record. This assignment of error is without merit.
In his fourth assignment of error, Mr. Palmer contends that the trial court erred by allowing impeachment evidence at trial that had previously been deemed inadmissible. Prior to trial, Mr. Palmer filed a motion in limine seeking to exclude, among other things, any testimony or evidence of his prior arrests and/or criminal convictions. Defendants agreed that Mr. Palmer's prior criminal conviction from 1993, for which he served a 17-year sentence in prison, was not admissible and did not oppose the motion in limine as to this issue. The trial court granted plaintiff's motion in limine as to "[a]ny arrests, indictments, prosecutions, or convictions of a crime more than ten (10) years ago."
During direct examination at trial, Mr. Palmer stated that he loved to work and had been working all of his life. He expressed that he wanted to get up and go places, be independent, and be his "old self again," but at times he would get up in the morning and not be able to move or would have to "wait a while to move."
After direct examination and before defense counsel questioned Mr. Palmer on cross-examination, due to Mr. Palmer's testimony that he worked all of his life, defendants' counsel requested that he be allowed to question Mr. Palmer about the 17-year period during which he did not earn any wages, without eliciting the reasons why he did not work. Plaintiff's counsel objected, arguing that such questioning was prejudicial and that Mr. Palmer did work during the 17 years he was incarcerated, even though he did not earn money for his work.
The trial court granted defendants' request and overruled plaintiff's objection, finding that Mr. Palmer's statement that he worked hard all of his life "does open the door" for defense counsel to question his lack of earned wages for 17 years.
Defense counsel asked Mr. Palmer:
You testified to the jury that you loved working and you worked hard all your life. Isn't it true that between 1993 and 2009, when you were 26 until you were 43, you had no reported income?
Mr. Palmer responded:
Right.
On appeal, Mr. Palmer argues that allowing defendants to present to the jury that he had no income for 17 years was inviting the jury to deduce that he was incarcerated during that time, and this evidence had already been deemed inadmissible.
The determination of the scope of cross-examination is within the discretion of the trial court and will not be disturbed absent an abuse of discretion. Chi. Prop. Interests, L.L.C. v. Broussard , 15-299 (La. App. 4 Cir. 10/21/15), 177 So.3d 1074, 1083, writ denied , 15-2117 (La. 1/25/16), 185 So.3d 748. In this case, before questioning Mr. Palmer about his lack of reported income, defense counsel verified with the trial court that the question was permissible. The trial court considered Mr. Palmer's statement on direct that he worked all of his life and found that it "opened the *1017 door" for the question to be asked. We find no abuse of the trial court's discretion in this determination. Further, we note that while Mr. Palmer surmises that the jury would have deduced that he was incarcerated during the period in question, there was no mention of Mr. Palmer's prior arrest, conviction, or his 17-year sentence at trial, which were excluded via the trial court's ruling on his motion in limine. This assignment of error is without merit.
In his fifth and final assignment of error, Mr. Palmer argues that the trial court erred by excluding a witness from testifying as a sanction for the alleged violation of the court's sequestration order. We disagree.
La. C.E. art. 615(A) provides:
As a matter of right. On its own motion the court may, and on request of a party the court shall, order that the witnesses be excluded from the courtroom or from a place where they can see or hear the proceedings and refrain from discussing the facts of the case with anyone other than counsel in the case. In the interests of justice, the court may exempt any witness from its order of exclusion.
At the beginning of trial, the trial court granted defendants' motion to sequester the witnesses. Later during the proceedings, Mr. Palmer called his aunt, Terry Glasper, to the stand, and defense counsel objected. Defense counsel stated that when he went to lunch, he saw Mr. Palmer talking to Ms. Glasper in the hall and he informed plaintiff's counsel. Defense counsel expressed concern that Mr. Palmer may have been talking to Ms. Glasper about what she should say in court later that day.
Outside of the jury's presence, the trial court called Ms. Glasper to the stand and questioned her in order to determine if the sequestration order had been violated. Ms. Glasper initially stated that she had not had any conversations with Mr. Palmer since the trial began, but then admitted that she had "briefly" conversed with him that day. When asked what the discussion was about, she stated, "Well, I drove in, and we had to pick him up from the hotel-hotel and just came here." She stated that their discussion was just "about the ride that [she] had coming here." The trial court then asked Ms. Glasper if she had talked to Mr. Palmer at the courthouse that day, and Ms. Glasper said, "no." When asked again if she had a conversation with Mr. Palmer, Ms. Glasper replied, "[N]ot a conversation, no," but she then admitted they had spoken briefly in the hall. Ms. Glasper stated that they had just talked "about being here," and she denied that they discussed anything about what had been said during the trial or what her upcoming testimony would be.
The trial court indicated that, based on the questioning of Ms. Glasper, it was concerned about her credibility due to her reluctance to disclose that she spoke with Mr. Palmer. Defense counsel orally moved for the trial court to exclude Ms. Glasper from testifying in this matter due to the violation, or potential violation, of the sequestration order. The trial court granted defendants' motion to preclude her testimony.
On appeal, Mr. Palmer argues that the trial court abused its discretion by finding a violation of the sequestration order, where there was no evidence of the nature of the conversation and no one testified that they were talking about the case. He argues that exclusion of witnesses is disfavored and that the circumstances in this case do not warrant disqualification of a witness, which is the most drastic remedy for violation of a sequestration order. He argues that Ms. Glasper was the only witness who would corroborate Mr. Palmer's *1018 claim that he was in pain after the accident, even though he did not seek medical treatment until three weeks later.
The purpose of the sequestration article is to prevent witnesses from being influenced by the testimony of earlier witnesses, and to strengthen the role of cross-examination in developing the facts. Johnson v. E.I. DuPont deNemours & Co. , 08-628 (La. App. 5 Cir. 1/13/09), 7 So.3d 734, 741. The trial court has the power to require that the proceedings be conducted with dignity in an orderly and expeditious manner, and to control the proceedings so that justice is done. Id. ; La. C.C.P. art. 1631(A).
La. C.E. art. 615(C) provides:
A court may impose appropriate sanctions for violations of its exclusion order including contempt, appropriate instructions to the jury, or when such sanctions are insufficient, disqualification of the witness."
Disqualification of a witness is a drastic remedy, but this sanction has been specifically approved when the sequestration violation was committed with the consent, connivance, procurement or knowledge of the party calling the witness. State v. Trahan , 576 So.2d 1 (La. 1990) ; Briscoe v. Briscoe , 25,955 (La. App. 2 Cir. 8/17/94), 641 So.2d 999, 1005. The particular sanction imposed for a sequestration violation rests within the sound discretion of the trial court. Id. ; Henry v. Sullivan , 16-564 (La. App. 1 Cir. 7/12/17), 223 So.3d 1263, 1270.
Mr. Palmer surely knew of the sequestration violation, as it occurred when Ms. Glasper was speaking to the plaintiff himself. Considering these circumstances and that Ms. Glasper was less than forthcoming when questioned, we find no abuse of discretion in the trial court's finding that the sequestration order was violated or its ruling precluding Ms. Glasper from testifying in this case. This assignment of error is without merit.
DECREE
For the foregoing reasons, we affirm the trial court judgment rendered in accordance with the jury's verdict, dismissing plaintiff's claims with prejudice.
AFFIRMED

Jeannie Breaux was the driver of the car that was struck by Mr. Smith's vehicle, causing her vehicle to strike Mr. Palmer's vehicle. Ms. Breaux filed suit against the same defendants as those named in Mr. Palmer's lawsuit. However, the parties filed a "Joint Motion to Dismiss with Prejudice," and Ms. Breaux's claims were dismissed with prejudice on March 22, 2017.

The record reflects that plaintiff's counsel used all of his peremptory challenges during jury selection.

Criminal jurisprudence on challenges for cause may be considered in civil cases. Wyatt v. Hendrix , 43,559 (La. App. 2 Cir. 11/5/08), 998 So.2d 233, 240.

Due to this finding, we pretermit discussion of whether Mr. Palmer's alleged prior back pain complaints were even "confidential communications" during the marriage that were subject to the spousal communications privilege set forth in La. C.E. art. 504(B).